Park A. DALLIS and Jacqueline C. Dallis, Plaintiffs,

v.

AETNA LIFE INSURANCE COMPANY, Defendant.

Civ. A. No. C82–910A.

United States District Court, N.D. Georgia, Atlanta Division.

Nov. 3, 1983.

E.T. Hendon, Jr., Moulton, Carriere, Cavan & Maloof, Decatur, Ga., for plaintiffs.

Tommy T. Holland, Anthony J. McGinley, Carter, Ansley, Smith & McLendon, Atlanta, Ga., for defendant.

### ORDER

ROBERT H. HALL, District Judge.

The present case stems from the refusal of defendant, Aetna Life Insurance Company, to reimburse the plaintiff for bills incurred in the treatment of plaintiff's wife's cancer. Jurisdiction is predicated upon diversity of citizenship, 28 U.S.C. § 1332. The case is presently before this court on defendant's motion for summary judgment. For the reasons stated hereinafter defendant's motion is DENIED in part, GRANTED in part.

### FACTS

Park A. Dallis is an employee[1] of DeKalb County, Georgia. Both he and his wife, Jacqueline C. Dallis (now deceased),[2] are covered under the terms and provisions of a group health insurance policy issued by defendant, Aetna Life Insurance Company, to DeKalb County.

In November, 1974 Ms. Dallis underwent surgery for the removal of a malignant tumor, diagnosed as "adrenal carcinoma." In November, 1977 Ms. Dallis again underwent cancer surgery. In April, 1978 Ms. Dallis began a treatment program of chemotherapy under the care of Dr. Ralph Vogler, a hematologist at Emory University Clinic. This treatment continued until January of 1979, when Dr. Vogler advised Ms. Dallis that in his opinion the treatment was non-productive. Shortly after discontinuing the chemotherapy Ms. Dallis enrolled in a nutritional therapy program offered by Dr. Kelly, a Washington state dentist. She stopped this program when she decided she "was not doing well." According to Carolyn Bunker, an Aetna employee, claims for this treatment were submitted and denied by Aetna as not covered under the policy. In late May, 1980 Ms. Dallis attended a nutrition conference in Atlanta and heard about "Dr. Burton's program" at the Immunology Researching Center, Ltd. (IRC) in Freeport, Bahamas. Shortly thereafter she saw a report on Dr. Lawrence Burton on the CBS television program "60 Minutes."

Ms. Dallis attempted to make an appointment at the IRC through an Atlanta doctor,

---

1. Mr. Dallis retired on August 31, 1982. Neither party suggests that this has any effect on the present action.

2. Due to the death of Jacqueline Dallis this court will refer to the plaintiff in the singular fashion throughout this order.

Dr. Fried, but he was unable to do this immediately. Dr. Fried did, however, write a note for her, on one of his prescription forms, which said: "See Dr. Burton in Freeport, Bahamas—Milton Fried, M.D." Dr. Fried told Ms. Dallis that he didn't know anything about Dr. Burton's program but that "there wasn't anything for her from anyone else." (Dr. Fried's depo., p. 22).

Ms. Dallis called the IRC directly and was advised to send her medical records for evaluation. She did so and within twenty (20) days was informed that she had been accepted as a patient. She went to Freeport and began treatment immediately. Upon arrival Ms. Dallis paid a $300.00 evaluation fee and $2,200 for the first month's therapy. Before beginning treatment Ms. Dallis did not contact Aetna to see if the expenses would be covered. During her deposition Ms. Dallis stated that she had no recollection as to whether the question of coverage "crossed [her] mind one way or the other. I just knew I wanted to be in on it.... It didn't make any difference. I was going to get on the program." (J. Dallis' depo., pp. 30, 31).

Ms. Dallis began treatment at the IRC on July 2, 1980, and continued until December 1980. Sometime between September 19 and November 19, 1980 claims for this period were submitted to Aetna. On March 10, 1981 the claims were denied. Defendant bases this denial on the following exclusion contained in the policy:

EXCLUSIONS, LIMITATIONS AND PROVISIONS APPLICABLE TO ALL TITLES

No insurance is afforded under any Title as to charges ... (5) for care, treatment, services or supplies which are not necessary for the treatment of the injury or disease concerned, nor to the extent that any charges for care, treatment, services or supplies are unreasonable.

Ms. Dallis returned to the IRC in March of 1981. She continued treatment there, on and off, until December 1982. Ms. Dallis died on January 19, 1983.

The IRC began operations in March, 1977 and was an outgrowth of the Immunology Research Foundation (IRF) located in New York. Lawrence Burton was Director of the IRF from 1973 until February 1977. While at IRF, Burton participated in experimental therapy of patients who had received orthodox cancer treatment. The IRF applied to the FDA for approval of their experimental therapy in 1974 but never received approval. The application was later withdrawn. Subsequently Dr. Burton and others decided to move to Freeport, Bahamas. Because the treatment had not been proven to be effective, the Bahamian Minister of Health placed certain restrictions on the treatment.

The nature of the treatment performed at the IRC is detailed in a pamphlet provided to prospective patients. Beginning at page 5, the pamphlet states: [3]

"Immuno-Augmentative therapy is the result of more than 25 years of research by Dr. Burton. His initial work was in the inducement of tumors in laboratory animals and from that study, he developed a method of isolating and purifying anti-cancer substances in the blood.

In addition to discovering a blocking protein which prevents the immune mechanism from working, Dr. Burton found the factors within the blood that have an anti-cancer effect. His therapy includes a deblocking protein (an alpha 2 macroglobulin), tumor complement (complement 3), and tumor antibody fractions which include the alpha 2 macroglobulin, 1gG, 1gM, and 1gA."

The mechanics of the immune response are described on page 6 of the pamphlet as follows:

After the tumor cells develop in the body and begin to grow, the tumor cells

**3.** This court is relying on the defendant's accuracy in quoting the pamphlet. The deposition of Rose Franks did not contain Exhibit 2—the pamphlet—as it should have. If plaintiff has any dispute as to the accuracy of the quote he is encouraged to bring it to the attention of the court.

send out a signal which stimulates the body to produce tumor complement. The tumor complement activates tumor antibody. This activation of the tumor antibody results in tumor cell death. A by-product of tumor cell death is a blocking protein which signals the immune mechanism to shut doors, by preventing the activation of the tumor antibody by the tumor complement.

However, the deblocking protein unites with the blocking protein, thereby neutralizing it and permitting the reactivation of tumor antibody by tumor complement.

.　　.　　.　　.　　.

All of the fractions used in the therapy are natural parts of the blood and therefore are non-toxic. Extensive testing for efficacy and toxicity is done prior to the addition of any new blood fraction to the therapy.

While in Freeport, patients are seen and tested daily at the Centre. The immuno-competence of the individual is tested at least once daily and then new therapy is prescribed.

Daily doses of fractions for the patients are determined by computer. In turn, the computer is used to track the results of the treatment.

.　　.　　.　　.　　.

Most patients must be prepared to stay a minimum of 6 to 8 weeks during their first visit....

Patients who have undergone the initial therapy take the fractions home with them along with computer projections of therapy. Patients return to the Centre according to pre-arranged appointments for check-ups and adjustments in the therapy."

On March 31, 1982 the plaintiff instituted the present suit against Aetna. In Count One of his complaint, plaintiff alleged that the defendant's refusal to pay the bills incurred at the IRC was "capricious, arbitrary and without foundation in fact." (Plaintiff's Complaint, ¶ 15). Under Count

One plaintiff contends that he is entitled to damages of:

1) $11,000 reimbursement, plus interest at a rate of 7%;

2) a sum equal to 25% of the principal sum as a penalty; and

3) reasonable and necessary attorney's fees.

In Count Two plaintiff alleges that defendant's denial was fraudulent and deceitful. For this plaintiff contends he is entitled to $1,000,000 in punitive damages.

On July 8, 1983 defendant filed the present action for summary judgment as to both counts. Further facts will be disclosed as necessary for the discussion of the motion.

DISCUSSION

1) *Count I*

The issue in Count One is whether the care, treatment, services and supplies received by Ms. Dallis at the IRC were "necessary" for the treatment of her cancer. Defendant contends that the IRC treatments were not "necessary" and that, therefore, the claims were rightfully denied. Plaintiff contends that the treatments were "necessary" and that defendant, therefore, is liable.

On a motion for summary judgment the party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case. For the reasons hereinafter stated, defendant's motion for summary judgment as to Count One is DENIED.

■ As both parties recognize, the real issue is the meaning of the term "necessary" as used in the exclusion defendant relies upon, i.e.:

No insurance is afforded ... as to charges ... (5) for care, treatment, services or supplies which are not necessary for the treatment of the injury or disease concerned....

Defendant contends that the term "necessary" should be equated with being "recognized as potentially efficacious and safe by the medical community, including all

significant branches and agencies therein which are concerned with treatment of cancer." (Defendant's Brief in Support of Motion for Summary Judgment, pagination not provided). Relying upon this standard defendant has moved for summary judgment. In support of this motion defendant tenders the affidavit of Dr. William Terry, former Associate Director of the Immunology Program, Division of Cancer Biology and Diagnosis at the National Cancer Institute. Defendant contends that Dr. Terry's affidavit shows that the medical community does not recognize the treatment by Burton and the IRC as necessary treatment for cancer.[4]

Plaintiff believes that the court should reject this definition supplied by the defendant. Plaintiff first argues that the term "necessary", as used in insurance clause in question, is an ambiguous term. Even if the language is not ambiguous, plaintiff contends that defendant's interpretation is unreasonable. According to plaintiff, " 'necessary for the treatment' implies that the care is, in some degree, beneficial to the patient." (Plaintiff's Brief in Opposition to Defendant's Motion, p. 22).

Under Georgia law, a question of contract interpretation is a question of law for the court as expressly provided in O.C.G.A. § 13–2–1. *B.L. Ivey Construction Co. v. Pilot Fire & Casualty Co.*, 295 F.Supp. 840 (N.D.Ga.1968). Only where a contractual provision is ambiguous does the interpretation thereof become a jury question. "Whether the language of an agreement is clear or ambiguous is a question of law for the court." *Smith v. Seaboard Coast Line R.R. Co.*, 639 F.2d 1235 (5th Cir.1981). The first determination for the court, therefore, is whether the term "necessary," as used in the contract, is, in fact, ambiguous.

The term "necessary" is an adjective and is, therefore, by its very nature, a term of degree. As *Black's Law Dictionary* states:

This word must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought. It is an adjective expressing degrees, and may express mere convenience or that which is indispensible or an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with, or it may mean something reasonably useful and proper, and of greater or lesser benefit or convenience, and its force and meaning must be determined with relation to the particular object sought.

*Id.* at 928 (5th ed. 1979).

A survey of the cases which have dealt with similar language reveals that there is no consensus among the courts as to the definition. In *R.A. v. The Prudential Ins. Co. of America*, No. L 8093–79 (S.Ct.N.J. Aug. 6, 1982), cited by both plaintiff and defendant, the court concluded that payments for laetrile treatments were not reimbursable under an insurance policy which excluded treatments not "reasonably necessary." The court based this holding on its decision that laetrile treatments are "worthless." The Supreme Court of South Carolina equated "necessary" with "appropriate." *Abernathy v. Prudential Ins. Co. of America*, 274 S.C. 388, 264 S.E.2d 836 (1980). In *Victum v. Marton*, 367 Mass. 404, 326 N.E.2d 12 (1975), the court held that "necessary" means "wise in the light of facts known at the time rendered."

For the foregoing reasons this court holds that the term "necessary for treatment" is an ambiguous term. It is not at all clear to this court that the average policy holder would understand from that term the actual boundaries of coverage under his/her policy. Even though this court deems the language ambiguous, a jury

---

**4.** We need not address plaintiff's objections to Dr. Terry's affidavit because we are denying defendant's motion for summary judgment.

question as to interpretation is not created unless the meaning is still uncertain after application by the court of all appropriate rules of construction. *Sim's Crane Service, Inc. v. Reliance Ins. Co.,* 514 F.Supp. 1033 (S.D.Ga.1981). Among such rules of construction, "it is a cardinal principle of insurance law that a policy or contract of insurance is to be construed liberally in favor of the insured and strictly against the insurer." *Atlas Assurance Co. Ltd. v. Lies,* 70 Ga.App. 162, 27 S.E.2d 791 (1943). It is important to bear in mind that the insurance companies draft the contracts and that the language is carefully chosen to limit the company's liability. Any doubts as to the exclusions should, therefore, be resolved, where possible, in favor of the insured.

In strictly construing the exclusionary clause against the defendant, for purposes of summary judgment, this court rejects defendant's definition of the term "necessary for treatment." To adopt the definition defendant tenders, i.e., "recognized as potentially efficacious and safe by the medical community, including all significant branches and agencies therein which are concerned with treatment of cancer," would be for this court to provide defendant with protection it failed to provide for itself. "If ... [the carrier] wishes to exclude or limit the risk contracted for, then let them do so in words that leave no doubt." *Fassio v. Montana Physicians Service,* 170 Mont. 320, 553 P.2d 998, 1000 (1976).

On this motion for summary judgment this court holds that under a liberal construction the exclusionary language is susceptible to an interpretation which could provide plaintiff with recovery. Plaintiff has presented among other evidence the following:

1) The deposition of Dr. Ralph Vogler, M.D., an Emory physician. Although Dr. Vogler stated that he is not familiar with Dr. Burton or the IRC, he did indicate that he is familiar with immunotherapy as a form of experimental treatment for cancer patients. According to Dr. Vogler "some of it has been reasonably successful, some of it has been marginally successful and most of it has been unsuccessful." (Vogler depo., p. 2223);

2) The deposition of Dr. Burton of the IRC who provided statistics as to the number of patients who are helped by his treatment;

3) The deposition of Dr. Bob Derrick, M.D. of Atlanta, Georgia. Dr. Derrick stated that it is accepted medical treatment to use experimental treatments on cancer patients who have not responded to standard modes of treatment. (Derrick depo., p. 13).

Whether any of plaintiff's evidence will result in a judgment for plaintiff depends entirely on the meaning given to "necessary for treatment." This court has determined that the term is ambiguous. Moreover, the court feels that the interpretation of the term presents a jury question. For this reason defendant's Motion for Summary Judgment as to Count One is DENIED.

2) *Count II*

Plaintiff's second count alleges that defendant's denial of plaintiff's claim was "fraudulent and deceitful." (Plaintiff's Complaint ¶ 21). In support of this claim plaintiff introduces the fact that Ms. Annette Porterea was reimbursed by Aetna Life Insurance Company for bills she incurred at the IRC during 1980. Defendant has stipulated as to the truth of this fact.

As this court made clear in an earlier order, there are five necessary elements of fraud: 1) a false representation made by the defendant; 2) scienter; 3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; 4) justifiable reliance by the plaintiff; and 5) damage to the plaintiff. *Dallis v. Aetna Life Insurance Co.,* C82–910A (N.D.Ga. filed August 9, 1982). As elaborated on below, plaintiff has not produced evidence to support each of these elements.

This court will assume, for the sake of argument only, that evidence of payments to Ms. Porterea establishes some evidence

to support elements one and two. Bearing in mind that the court must, on this motion for summary judgment, construe all evidence in the light most favorable to plaintiff, this court concludes that plaintiff has not produced any evidence to support the remaining three elements.

Assuming that the false statement plaintiff alleges is defendant's assertion that it does not pay claims such as plaintiffs, none of plaintiff's evidence establishes any intent to induce plaintiff to act or refrain from acting in reliance on this statement. Moreover, it is clear that plaintiff has failed to establish any detrimental reliance on this statement. Ms. Dallis did not even contact defendant before beginning treatments at the IRC and in her own words, whether the company would reimburse her "didn't make any difference." (J. Dallis depo., p. 31).

For these reasons defendant's Motion for Summary Judgment as to Count II is GRANTED.

In summary, this court:

1) DENIES defendant's motion for summary judgment as to Count One; and

2) GRANTS defendant's motion for summary judgment as to Count Two.