**UNITED STATES of America, Plaintiff,**

v.

**ROCKWELL INTERNATIONAL CORPORATION,**
Defendant.

No. 1:91–CV–2280–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 27, 1992.

Marlene F. Gibbons, U.S. Dept. of Justice, Civ. Div., Washington, D.C.; Daniel A. Caldwell, III, Asst. U.S. Atty., Atlanta, Ga., for plaintiff.

Dorothy Yates Kirkley, William J. Holley, II, Paul Hastings Janofsky & Walker, Atlanta, Ga., Chadbourne & Parke, Los Angeles, Cal., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This is a case in which Plaintiff asserts claims pursuant to the Federal False

Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, as well as various common law provisions regarding unjust enrichment, payment under mistake of fact, and breach of contract. Jurisdiction is vested with this Court pursuant to 28 U.S.C. § 1331.

The case is presently before the Court on Defendant's Motion for Judgment on the Pleadings Dismissing Counts Three, Four and Five of Plaintiff's Complaint [11-1]. The Court DENIES Defendant's Motion.

## BACKGROUND

Plaintiff is the United States of America. Defendant Rockwell International Corporation is a Delaware corporation engaged in the production of various weapons systems. This lawsuit involves two separate contracts entered into between Plaintiff, acting through the United States Air Force, and Defendant, pursuant to which Defendant agreed to produce and Plaintiff agreed to purchase a number of common module sets for the Guided Bomb Unit –15 ("GBU–15") Modular Guided Weapons System. The GBU–15 Weapons System is a precision-guided bomb which is designed to destroy a variety of targets. The two contracts at issue in this case were not the subject of competitive bidding. Rather, Defendant was the sole source from which Plaintiff procured the GBU–15 Weapons System common module sets. The two contracts are identified as contract F08635–84–C–119 ("Contract I") and modification P00003 to contract F08635–86–C–0392 ("Contract II"). Contract I was a "fixed-price contract", and Contract II was a "fixed-price incentive contract." [1]

At all relevant times, the Truth in Negotiations Act ("TINA"), 10 U.S.C. § 2306a, and applicable regulations were in effect and were incorporated into each GBU–15 contract between Plaintiff and Defendant. Pursuant to TINA, a contractor is required to execute and submit a Certificate of Current Cost and Pricing Data ("Certificate") at the end of negotiations with the United States. The Certificate requires a statement by the contractor that the cost and pricing data submitted by the contractor in support of its proposal were "accurate, complete, and current" as of the date of certification. *See* 10 U.S.C. § 2306a(a)(2).

Price negotiations between Plaintiff and Defendant regarding Contract I concluded in January, 1984. In accordance with TINA, Defendant signed a Certificate on February 3, 1984, certifying that cost and pricing data supplied to U.S. Air Force negotiators were accurate, complete and current as of January 27, 1984. Price negotiations between Plaintiff and Defendant regarding Contract II concluded in August, 1987. Again, in accordance with TINA, Defendant thereafter signed a Certificate certifying that cost and pricing data supplied to U.S. Air Force negotiators were accurate, complete and current as of August 6, 1987.

On September 20, 1991, Plaintiff commenced the instant lawsuit, alleging Defendant's violation of the FCA, as well as various provisions of common law. Specifically, Plaintiff alleges that with regard to Contracts I and II, Defendant during its negotiations with U.S. Air Force negotiators knowingly withheld relevant cost and pricing information, and falsely certified that such information, as disclosed, was accurate, complete and current as of the close of the negotiations period. With regard to Contract I, Plaintiff alleges that Defendant knowingly failed to disclose cer-

---

**1.** Under the terms of a fixed-price contract, once an agreement upon price is reached by the contracting parties, the contractor may retain every dollar by which the contract price exceeds the actual costs of performing the work specified under the contract. In contrast, under the terms of a fixed-price incentive contract, a target cost and target profit are negotiated, which in turn are added to reach a target price. At the same time, a ceiling price and share ratio are negotiated. Upon the conclusion of performance under the contract, the contractor submits a record of total cost, which includes cost and profit, incurred during the length of the contract. If the contractor's total cost is less than the target price, the contractor receives a share of the savings, based upon the negotiated share ratio. If the contractor's total cost exceeds the target price but is less than the ceiling price, the negotiated share ratio is applied to reduce the contractor's profit. If the contractor's total cost exceeds the ceiling price, the contractor must absorb all costs in excess of the ceiling price.

tain pricing data involving lower price quotations received by Defendant from Defendant's potential subcontractors, information obtained by Defendant during fact-finding visits to potential subcontractors, and the substance of negotiations between Defendant and its subcontractors. With regard to Contract II, Plaintiff alleges that Defendant knowingly failed to disclose certain pricing data involving lower price quotations received by Defendant from Defendant's potential subcontractors, as well as certain agreements between Defendant and Defendant's subcontractors that certain non-recurring costs incurred by the subcontractors would not be paid by Defendant. As a result of Defendant's actions, Plaintiff claims that the final prices negotiated for Contracts I and II were significantly inflated, the pricing information supplied in conjunction with the negotiations having been falsely certified by Defendant.

In Counts I and II of its Complaint, Plaintiff alleges Defendant's violation of 31 U.S.C. § 3729(a)(1). That Section prohibits any person not a member of a U.S. armed force from "knowingly present[ing], or caus[ing] to be presented, to an officer or employee of the Government or a member of an armed force a false or fraudulent claim for payment or approval." Count II seeks recovery for Defendant's alleged violation of 31 U.S.C. § 3729(a)(2). That Section prohibits any person not a member of a U.S. armed force from "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved" by the United States. Plaintiff brings Counts III, IV and V of its Complaint pursuant to common law, alleging Defendant's unjust enrichment (Count III), Plaintiff's payment under mistake of fact (Count IV), and Defendant's breach of contract (Count VI).

Presently, Defendant has filed a Motion for Judgment on the Pleadings Dismissing Counts Three, Four and Five of Plaintiff's Complaint, which this Court will now consider.

## DISCUSSION

Defendant requests dismissal of Counts III, IV and V pursuant to Federal Rule of Civil Procedure 12(c), arguing that this Court lacks subject matter jurisdiction over those common law claims. This Court, however, does not agree.

■ The Constitution vests Congress with the power to establish federal district courts. *See* United States Constitution, Article III, § 1 ("The judicial Power of the United States, shall be vested in ... such inferior Courts as the Congress *may* from time to time ordain and establish.") (emphasis added). Congress' power to establish federal district courts includes the discretionary authority to limit and create exceptions to the jurisdiction of those courts. As the Supreme Court stated in *Lockerty v. Phillips*, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339 (1943):

> All federal courts, other than the Supreme Court, derive their jurisdiction wholly from the exercise of the authority to "ordain and establish" inferior courts, conferred on Congress by Article III, § 1, of the Constitution. Article III left Congress free to establish inferior federal courts or not as it thought appropriate.... The Congressional power to ordain and establish inferior courts includes the power "of investing them with jurisdiction either limited, concurrent, or exclusive, and of withholding jurisdiction from them in the exact degrees and character which to Congress may seem proper for the public good."

*Id.* at 187, 63 S.Ct. at 1022 (citations omitted). As a result, where Congress grants exclusive jurisdiction over a particular type of claim to a specific agency or tribunal, or explicitly takes jurisdiction away from federal district courts, the federal district courts are bound by that decision. *See, e.g., San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959) (in area of labor law, Congress' grant of exclusive jurisdiction over certain issues to National Labor Relations Board preempts federal district court jurisdiction over those issues); *Vaca v. Sipes*, 386 U.S. 171, 179, 87 S.Ct. 903,

911, 17 L.Ed.2d 842 (1967) (same); *Parker v. Connors Steel Co.,* 855 F.2d 1510, 1516 (11th Cir.1988), *cert. denied,* 490 U.S. 1066, 109 S.Ct. 2066, 104 L.Ed.2d 631 (1989) (same).

Such a grant by Congress of exclusive jurisdiction over a matter to a body other than the federal district courts is found in the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601–613, which gives exclusive jurisdiction over "[a]ll claims by the government against a contractor relating to a contract", *see* 41 U.S.C. § 605(a), to the United States Claims Court and agency boards of contract appeals. The CDA was enacted in 1978 to establish a comprehensive and exclusive procedure for adjudicating contract disputes between the government and its contractors. Pursuant to 41 U.S.C. § 602(a), the CDA "applies to any express or implied contract ... entered into by an executive agency" for the procurement of goods or services.

Under the CDA, the government officer charged with administering a government contract (the "contracting officer") must initially decide "[a]ll claims by the government against a contractor relating to a contract." 41 U.S.C. § 605(a). The contracting officer's decision "shall be final and conclusive" unless appealed to an agency board of contract appeals or the United States Claims Court. 41 U.S.C. §§ 605(b), 606, 609(a). From either of those two forums, a party can appeal only to the United States Court of Appeals for the Federal Circuit. 41 U.S.C. § 607(g)(1).

■ As a result, federal district courts do not have jurisdiction to hear government contract claims that are subject to the CDA. *See McDonnell Douglas Corp. v. U.S.,* 754 F.2d 365, 370 (Fed.Cir.1985) ("the evident purpose of Congress when it enacted the [CDA] ... [was] to centralize the adjudication of government contract disputes" in the contracting officer, the board and the Claims Court); *Seaboard Lumber Co. v. U.S.,* 15 Cl.Ct. 366, 373 (1988), *aff'd,* 903 F.2d 1560 (Fed.Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1308, 113 L.Ed.2d 243 (1991) ("The CDA ... could have ... provided for jurisdiction over

government breach of contract claims to be placed in the District Courts. It, however, did not...."); *Management Science America, Inc. v. Pierce,* 598 F.Supp. 223, 225 (N.D.Ga.1984), (Evans, J.), *aff'd,* 778 F.2d 792 (11th Cir.1985) ("The CDA provides for appeals to either the agency board of contract appeals or the United States Claims Court, and specifically abolishes the jurisdiction of the federal district courts to hear claims 'founded upon any express or implied contract with the United States' which is subject to the CDA.").

Moreover, the legislative history of the CDA explicitly states Congress' intent in enacting the statute: "U.S. district court jurisdiction is eliminated from Government contract claims." S.Rep. No. 1118, 95th Cong., 2d Sess. 10, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5235, 5244. It is thus clear that this Court has jurisdiction over Plaintiff's claims herein only if they are excepted from coverage under the CDA, which this Court finds they are.

Congress indeed carved out a few isolated exceptions to the CDA's coverage. Among those very limited exceptions is an exception for "any claim involving fraud." Specifically, 41 U.S.C. § 605(a) provides that the CDA "shall not authorize any agency head to settle, compromise, pay, or otherwise adjust any claim involving fraud."

■ Defendant in the instant case does not contend that Counts I and II, involving claims that Defendant violated the FCA, are exempt from coverage under the CDA. Rather, Defendant admits that those claims "arguably" involve allegations of fraud, *see* Defendant's Memorandum of Law in Support of Motion for Judgment on the Pleadings Dismissing Counts Three, Four and Five of the Complaint, p. 9, and therefore are excepted from coverage under the CDA, with the result that they are subject to the jurisdiction of this Court. Thus, Defendant does not request dismissal of Counts I and II of Plaintiff's Complaint. Indeed, this Court agrees with Defendant's assessment with regard to Counts I and II of Plaintiff's Complaint. *See* 31 U.S.C.

§ 3729 (violation of FCA requires "knowing" conduct).

■ Defendant does, however, request dismissal of Counts III, IV and V of Plaintiff's Complaint, wherein Plaintiff alleges Defendant's unjust enrichment (Count III), Plaintiff's payment under mistake of fact (Count IV), and Defendant's breach of contract (Count V). Defendant seeks dismissal of these claims on the grounds that they do not involve any allegations of fraud, and thus are not excepted from coverage under the CDA. Defendant bases its argument on the fact that in order to prove its claims under Counts III, IV and V, Plaintiff is not required to prove, and indeed Plaintiff does not presently allege, any scienter on Defendant's part.[2] Therefore, argues Defendant, Plaintiff's common law claims may not be characterized as claims "involving fraud." As a result, those claims are not excepted from coverage under the CDA, and this Court is effectively divested of jurisdiction over them. This Court, however, does not agree.

■ In opposing Defendant's Motion, Plaintiff argues that regardless of the CDA's general application to government contract disputes, this Court, due to its uncontested jurisdiction over Plaintiff's FCA claims, also retains jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. §§ 1345 and 1367(a). Section 1345 provides:

> Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

Moreover, 28 U.S.C. § 1367(a) provides in pertinent part:

> (a) Except . . . as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

As stated above, Defendant in the instant case does not dispute this Court's exercise of original jurisdiction over Plaintiff's FCA claims due to the CDA's express exception of such fraud claims from its own coverage. However, the Court agrees with Plaintiff that that initial original jurisdiction issue having been decided, this Court may, pursuant to 28 U.S.C. § 1367(a), exercise "supplemental jurisdiction over all other claims . . . [which] form part of the same case or controversy" as Plaintiff's FCA claims.

■ Moreover, the Court also agrees with Plaintiff that § 605(a) of the CDA deprives the other agencies of authority over claims "involving fraud," not just of authority over "causes of action for fraud" itself. This Court finds that the more desirable interpretation of § 605(a), read in conjunction with 28 U.S.C. § 1367(a), is that where specific the events, transactions, and contracts at issue in the lawsuit give rise to fraud allegations, the CDA no longer governs.

First, the legislative history of the CDA itself supports this conclusion. The Senate Report expressly states, "It is not the intent of this section to change the current procedures for settlement of claims by the Justice Department once the claims have been turned over to that body or litigation has commenced in court." S.Rep. No. 95–1118, 95th Cong., 2d Sess. 20, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5253.

Second, numerous district courts have confirmed that common law claims, such as those asserted in the instant case, which arise from fact situations also involving the FCA, are "claims involving fraud" and jurisdiction of the district court is not barred by the CDA. A case brought to the Court's attention by both parties is *U.S. v. JT Construction Co., Inc.,* 668 F.Supp. 592

---

**2.** Here, Defendant argues, and this Court agrees, that scienter is a necessary element of common law fraud. *See* Defendant's Memorandum; p.

10 (citing *Dallis v. Aetna Life Ins. Co.,* 574 F.Supp. 547, 552 (N.D.Ga.1983) (Hall, J.), *aff'd,* 768 F.2d 1303 (11th Cir.1985)).

(W.D.Tex.1987) (Hudspeth, J.). In *JT Construction*, as here, the Government asserted common law claims of payment under mistake of fact and unjust enrichment, in addition to its claims asserted under the FCA. The defendant moved to dismiss the Government's common law claims on the grounds that the Court lacked subject matter jurisdiction over those claims, since the CDA requires that they be submitted to the administrative agency for determination.

Thus, faced with the same situation as that facing this Court presently, the Court in *JT Construction* evaluated the CDA and its legislative history to determine whether, through passage of the CDA, Congress had "clearly manifested" an intent to raise a statutory barrier to recovery by the government under its common law claims. *Id.* at 593. The Court determined that the CDA was not intended to act as such a barrier, and furthermore that the CDA's legislative history "verifies the congressional intent that *all matters involving fraud* were to be excepted from its application." *Id.* at 594 (emphasis added). Thus, the Court in *JT Construction* concluded:

> Of course, claims of payment under mistake of fact and unjust enrichment could arise from a fact situation not involving fraud. In such a hypothetical case, a close question might be presented as to whether such claims were preempted by the [CDA]. That is not, however, the fact situation here. It is clear from the entire context that the Government is claiming fraud on the part of [the defendants].... The same basic set of facts was involved in the criminal [fraud] indictment and in all claims presented in this civil action. It would be unrealistic to say that some claims in the present action "involve fraud" and others do not. Since the Court finds that the claims presented in counts III and IV [payment by mistake; unjust enrichment] come within exceptions to the CDA, the Defendants' motion to dismiss these claims should be denied.

*Id.* at 594. Accordingly, the Court in *JT Construction* denied the defendants' motion to dismiss the Government's common law claims. *Id.*

Plaintiff also attaches as Exhibits A and B to its Response to Defendant's Motion two recent district court opinions reaching the same conclusion. First, *U.S. v. Gen'l Dynamics Land Systems, Inc.*, No. 90–70340 (E.D.Mich., Aug. 7, 1990) (Cohn, J.) was an action involving claims brought pursuant to the FCA, with the Government bringing additional common law claims of fraud, payment under mistake of fact, and unjust enrichment. Among its other motions, the defendant moved to dismiss the Government's common law claims on the basis of lack of jurisdiction due to CDA preemption. The defendant further requested a stay of the district court proceedings with regard to the Government's FCA claims pending resolution of the Government's common law claims by the designated administrative body in that case, i.e., the Armed Services Board of Contract Appeals ("ASBCA").

Nevertheless, the Court, after carefully examining the legislative history of the CDA, concluded that "[t]he only implication to be drawn from this language is that when the claims are associated with fraud, they cannot continue on in the agency board [ASBCA] where they originated." *Id.* at 8. In rejecting both the defendant's motion to dismiss and its further request to stay the district court proceedings, the Court held that "[t]he ASBCA does not have primary jurisdiction over TINA claims when they are raised *in the fraud context.*" *Id.* at 9 (citing *JT Construction*, 668 F.Supp. at 593) (emphasis added). The Court further found that "the alleged TINA violation is the key to this case. If the ASBCA were to decide the mistake of fact and unjust enrichment claims, it could not avoid usurping the Court's statutory authority to decided the fraud and [FCA] issues." *Id.* Thus, the Court concluded that the Government's common law claims were too intertwined with its general allegations of fraud to allow the common law claims to be decided in a separate forum from the FCA claims. In so deciding, the Court specifically rejected the defendant's attempt to distinguish *JT Construction* from the facts of that case. In fact, the

Court in *Gen'l Dynamics* specifically upheld and affirmed the decision of the Court in *JT Construction,* finding that that Court "properly analyzed the legislative history of the CDA and reached the right decision" in not allowing dismissal of the Government's common law claims. *Id.* at 10.

Second, Plaintiff attaches to its Response a copy of the Court's opinion in *U.S. v. The Meredith Corp.,* Civ. No. 89–668–B, 1990 WL 375611 (S.D.Iowa, June 15, 1990). That case involved claims brought by the Government pursuant to the FCA, as well as the Government's common law claims for fraud, unjust enrichment, payment by mistake, and breach of contract. As in *JT Construction* and *Gen'l Dynamics,* the defendants in *Meredith* moved to dismiss the Government's common law claims for unjust enrichment, payment by mistake, and breach of contract on the grounds that the district court had no subject matter jurisdiction over those claims due to CDA preemption. However, the Court in *Meredith* again rejected the defendants' dismissal argument. In carefully analyzing the CDA, the Court stated that "[a]lthough the CDA does preclude district court jurisdiction over certain contract claims, the CDA exempts *fraud related claims* from its coverage." *Id.* at 3 (citing 41 U.S.C. § 605(a)) (emphasis added). Pursuant to this interpretation, the Court concluded that because the Government's common law claims "appear to be fraud related claims," those claims should not be dismissed for lack of jurisdiction. *Id.*

In contrast to the authority cited above, Defendant in moving for dismissal relies exclusively upon two recent decisions by the same district court reaching the opposite conclusion on the issue of CDA preemption. In both *U.S. v. Hughes Aircraft Co.,* No. CV89–6842–WJR, 1991 WL 133569 (C.D.Cal., April 5, 1991) (Rea, J.) (*"Hughes I"*), and *U.S. ex rel. John P. Perron, Jr. v. Hughes Aircraft Co.,* No. CV89–3312–RG, 1991 WL 352416 (C.D.Cal., April 29, 1991) (Gadbois, J.) (*"Hughes II"*) (copies attached to Defendant's Motion), the Court dismissed the Government's common law claims asserted in conjunction with its FCA claims on grounds of lack of jurisdiction.

Nevertheless, this Court agrees with Plaintiff that the holdings in both *Hughes I* and *Hughes II* were based in large part upon authority that is either inconsistent with, or inapplicable to, the final conclusion reached in those cases. In *Hughes I,* in stating the general proposition that if the plaintiff's common law claims are governed by the CDA, "then the administrative procedures of the CDA are controlling and the Court does not have subject matter jurisdiction", Opinion dated April 5, 1991, p. 2, the Court relied, without analysis or discussion, upon *Gen'l Marine Construction Corp. v. U.S.,* 738 F.Supp. 586 (D.Mass. 1990) (Woodlock, J.); *U.S. v. Triple A Machine Shop, Inc.,* 857 F.2d 579 (9th Cir. 1988); and *Joseph Morton Co., Inc. v. U.S.,* 757 F.2d 1273 (Fed.Cir.1985). However, this Court finds that these cases are inapplicable to the specific issue presently before this Court, and indeed, to that issue which was before the Court in *Hughes I* and *Hughes II.*

First, the central issue before the Court in *Gen'l Marine* was the proper joinder of third-party defendants, pursuant to Federal Rule of Civil Procedure 14(c), in an action involving admiralty or maritime claims, when that action already has been properly commenced in federal district court. Moreover, the Court in *Gen'l Marine* reached the seemingly opposite conclusion from the *Hughes I* Court in holding that once a case has properly been commenced as an admiralty matter in the district court, the district court retains jurisdiction over related claims, *even if* those related claims, standing alone, would otherwise be subject to the CDA's procedural scheme. 738 F.Supp. at 590.

Similarly inapplicable for purposes of the present analysis is *Triple A,* which involved a dispute between the Government and a lessee of government property as to whether the lease had been renewed. The Court in *Triple A* merely states the general proposition that where the Government's contract claims are found to be governed by the CDA, *then* the district court is divested of jurisdiction over those claims. 857 F.2d at 584–585.

Finally, almost as inapplicable to the present situation is *Joseph Morton*, also cited by the Court in *Hughes I*. *Joseph Morton* involved a contractor's claim against the Government alleging the wrongful termination of a right to perform a construction contract. There the Court held that as regards the Government's counterclaims for fraud, where the plaintiff's alleged fraud has been conclusively determined, liability for reprocurement costs and damages are issues which are separable from the issue of fraud, and are therefore issues which are subject to the procedural mechanism of the CDA. *Joseph Morton*, 757 F.2d at 1281.

Having cited these inconsistent and inapplicable cases for support, the Court in *Hughes I* then proceeded summarily to conclude, without discussion or citation to any authority whatsoever, that "the government's claims for mistake and unjust enrichment are governed by the CDA and do not fall within the fraud exception of the CDA." *Id.* As a result, the Court dismissed the Government's common law claims.

In an even more brief and cursory opinion, the same Court in *Hughes II* summarily concluded, again without discussion or analysis, that the Government's common law claim for "mistake, which is not the same as fraud, is not properly before this Court", again citing the inconsistent and inapplicable cases of *Gen'l Marine* and *Triple A* for support, with the result that the Government's common law claims were again dismissed. Opinion dated April 29, 1991, p. 2.

It is this Court's opinion, however, that none of the cases cited in support of the Court's decision in either *Hughes I* or *Hughes II* is directly on point as regards the present analysis. None of those Courts was faced with, or indeed even discussed, the specific preemption issue raised in the instant case—that is, whether common law claims such as those asserted by Plaintiff in the instant case, raised in the general context of allegations of government contractor fraud, are governed by the CDA.

Thus, contrary to Defendant's belief that "[t]he result [reached] in *JT Construction* is odd", *see* Defendant's Memorandum in Support of Motion, p. 12, the Court finds that it is the result reached in *Hughes I* and *Hughes II* which is both inconsistent and irreconcilable with the overwhelming weight of authority. This Court therefore declines Defendant's invitation to follow the decisions in *Hughes I* and *Hughes II*, finding the more sound reasoning and desirable result in the line of cases including *JT Construction, Gen'l Dynamics*, and *Meredith*. The Court concludes that in the instant case, it retains jurisdiction over Plaintiff's common law claims of unjust enrichment, payment under mistake of fact, and breach of contract, and that those claims should not be dismissed.

Finally, the Court agrees with Plaintiff that the result urged by Defendant, that is, dismissal of Plaintiff's common law claims, would lead to an unreasonable and undesirable result. Although they are not brought pursuant to the FCA, Plaintiff's common law claims indisputably are based upon Plaintiff's general allegations that Defendant has acted fraudulently in the course of its contract negotiations with Plaintiff. Thus, to hold that Plaintiff's common law claims must be decided by the administrative board pursuant to the CDA would in effect result in an impermissible grant of authority to an "agency head to settle, compromise, pay or otherwise adjust [a] ... claim involving fraud" in direct violation of § 605(a) of the CDA itself. Furthermore, Plaintiff would be forced to pursue its claims, all of which indisputably arise from a single set of operative facts, in different proceedings in two different forums. As Plaintiff suggests, this "would result in a waste of adjudicative resources and the threat of inconsistent results", Plaintiff's Response, p. 13, which this Court does not favor.

Thus, the Court concludes that in the instant case, as was the case in *JT Construction, Gen'l Dynamics*, and *Meredith*, Plaintiff's common law claims are indeed "so related" to Plaintiff's FCA claims "that they form part of the same case or controversy" so as to allow this Court to retain

jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a). Moreover, the Court finds that such a result not only is fully consistent with Congress' intent in passing the CDA, as expressed in the legislative history of the statute, but also is consistent with the plain language and intended purpose of the exception for claims involving fraud contained in 41 U.S.C. § 605(a). In addition, the Court finds that this result is fully consistent with the overwhelming weight of authority on the matter.

## CONCLUSION

The Court DENIES Defendant's Motion for Judgment on the Pleadings Dismissing Counts Three, Four and Five of Plaintiff's Complaint [11–1].

So ORDERED.