The **UNITED STATES of America, Plaintiff,**

v.

George **MAROVIC, et al., Defendants.**

**No. C 97–3063 CRB.**

United States District Court, N.D. California.

Oct. 20, 1999.

Justin Draycott, U.S. Department of Justice, Washington, DC, for U.S.

John E. Hill, Law Offices of John E. Hill, Oakland, CA, for Patricia Reagan.

George Marovic, Fremont, CA, pro se.

Michael T. McKeeman, Seyfarth Shaw Fairweather & Geraldson, San Francisco, CA, for Anteon Corp.

James S. Kennell, Fried Frank Harris Shriver & Jacobson, Washington, DC, for Computer Sciences Co.

## MEMORANDUM AND ORDER

BREYER, District Judge.

Now before the Court are the motions to dismiss for lack of subject matter jurisdiction of defendants Computer Sciences Corporation and Anteon Corporation. After carefully considering the papers submitted by the parties, and having had the benefit of oral argument on October 8, 1999, the motions to dismiss are GRANTED.

## BACKGROUND

### A. *Factual Background*

This False Claims Act ("FCA") action arises out of a subcontractor's submission of invoices for work that was never performed. From 1990 through 1995, defendant Computer Sciences Corporation ("CSC") had a contract with the General Services Administration ("GSA") to provide business-related automated data processing services to federal agencies throughout the western United States. GSA assigned work under the contract on a "task-order" basis. Upon the request of an agency, GSA would issue a task order specifying the services needed by a particular agency. Some of the task orders included work to be performed at the Naval Public Works Center ("PUC"). CSC subcontracted the PUC work to defendant Techo, Inc. ("Techo"). Techo's CEO was defendant George Marovic. Techo had been performing similar services for the PUC since before CSC obtained the GSA contract.

In 1995, defendant Anteon succeeded CSC as the prime contractor. Anteon continued to use Techo as a subcontractor for PUC work.

CSC and Anteon submitted invoices to the PUC for payment based on employee

hours worked. With respect to the work performed by Techo, CSC and Anteon submitted to the PUC the information Techco submitted to them. Certain PUC officials, including defendant Todd Dods, were responsible for reviewing the invoices to ensure that they were accurate. These officials then forwarded the invoices to GSA for payment. Payment was made to the prime contractors, CSC and Anteon. At some point the government discovered that Techo was submitting invoices for employee hours never performed and that defendant Dods was aware of the discrepancy but approved the invoices for payment nonetheless.

## B. *Procedural History*

The government indicted defendants Techo, Marovic and Dods in March 1997. Five months later, PUC employee Patricia Reagan filed a FCA qui tam action against these same defendants. The government intervened in March 1998 and filed a First Amended Complaint ("FAC"). The FAC includes the FCA claims against Techo, Marovic, and Dods, and adds common law claims against them for payment by mistake, unjust enrichment, and fraud. The FAC also adds as defendants CSC and Anteon and makes common law claims against them for unjust enrichment, payment by mistake, and breach of contract. The FAC does not allege that CSC and Anteon engaged in fraud or that they were aware that the Techo invoices were false.

In December 1998, the Court dismissed the qui tam plaintiff for lack of subject matter jurisdiction. CSC and Anteon now move to dismiss the claims against them on the ground that the Contract Disputes Act ("CDA") deprives the Court of jurisdiction of the common law claims against them.

## DISCUSSION

### A. *The Burden of Proof*

The government bears the burden of proving that the Court has subject matter jurisdiction of its common law claims against CSC and Anteon. *See Hexom v. Oregon Dep't of Transp.,* 177 F.3d 1134, 1135 (9th Cir.1999).

### B. *The CDA*

The CDA provides in relevant part:

All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer. Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim. *The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud.*

41 U.S.C. § 605(a) (emphasis added). As one district court has explained:

The CDA establishes a comprehensive scheme of legal and administrative remedies for the resolution of government contract disputes. This scheme is designed to foster administrative resolution of government contract disputes and to this end it excludes these disputes from federal district court. An integral part of the comprehensive CDA scheme is the CDA's requirement that each agency designate a "contracting officer," a person who has the authority to enter into and administer contracts on behalf of that agency.... The CDA requires that breach of contract disputes be presented to the designated contracting officer rather than filed in federal district court. This provides the agency with an opportunity to review and resolve the dispute short of litigation.... Once the contracting officer has issued a

decision on the dispute, either party may appeal the decision to the agency's administrative Board of Contract Appeals or may forego the administrative route and seek review in the United States Court of Federal Claims.... The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals from either the Board of Contract Appeals or the Court of Claims.

*United States v. Unified Industries, Inc.,* 929 F.Supp. 947, 949 (E.D.Va.1996). If the government's common law claims against CSC and Anteon are not based on claims by these defendants that "involve fraud," the Court does not have jurisdiction and the government must instead pursue its remedies under the CDA.

### C. *The Government Has Not Proved That The CDA Fraud Exception Applies*

■ The government states—without elaboration—that its claims against CSC and Anteon are based upon claims by these defendants that "involve fraud." The Court assumes that the government is contending that because CSC's and Anteon's claims for payment were based upon Techo's false invoices, the claims "involve fraud" even if CSC and Anteon did not themselves engage in fraud. A broad reading of the "fraud" exception to the CDA supports the government's interpretation of the statute. The Court is unpersuaded, however, that a broad reading of the fraud exception is appropriate.

The cases cited by the government do not support the government's broad interpretation. Each case involves contract claims and fraud claims *against the same contractor.* In those cases, if the government had proved the fraud claim it would have *a fortiori* have proved its common law claims; the contract claims did not involve any facts or parties that were also not part of the fraud claims. In *United*

*States v. Unified Indus., Inc.,* 929 F.Supp. 947 (E.D.Va.1996), for example, the court concluded that unjust enrichment and breach of contract claims against a contractor who was also a defendant on the FCA claim "involve fraud" within the meaning of section 605(a) because such claims were "intimately bound up with and part of the same case or controversy as" the FCA claim. *Id.* at 951. Similarly, in *United States v. Rockwell Int'l Corp.,* 795 F.Supp. 1131 (N.D.Ga.1992), the court concluded that contract claims against a contractor against whom FCA claims were made were subject to the fraud exception because the non-fraud claims were "indisputably based on [the government's] general allegations that [the contractor] acted fraudulently in the course of its negotiations with [the government]." *Id.* at 1138.

Here, in contrast to the above cases, the contract claims against CSC and Anteon are not based on the allegations that Techo engaged in fraud, and the contract claims against CSC and Anteon are not "intimately bound up" with the FCA claim. Rather, the contract claims against CSC and Anteon are based on the general allegation that CSC and Anteon were paid for work which was not performed. The success of those claims is not dependent upon a determination that Techo engaged in fraud. Indeed, CSC and Anteon are not even parties to the fraud claims. Moreover, defendants' defenses to the contract claims are also unrelated to whether Techo engaged in fraud.

*Rockwell,* a case discussed by the government, actually suggests that the Court does not have subject matter jurisdiction. The *Rockwell* court stated that the "involves fraud" exception to the CDA is a "very limited exception." *Id.* at 1134. The government's interpretation of the exception as applied to this case would make it a very broad exception.

In addition, in reaching its decision, *Rockwell* relied on *United States v. Gener-*

al Dynamics Land Systems, Inc., No. 90–70340 (E.D.Mich. Aug. 7, 1990). In particular, *Rockwell* observed that the *General Dynamics'* decision was based on the fact that the "contracting officer" could not decide the common law contract claims "'without usurping the Court's statutory authority to decide the fraud and [FCA] issues.'" *Id.* at 1136 (quoting *General Dynamics*). Here, the government has not explained why the contracting officer cannot decide the government's contract claims against CSC and Anteon without deciding whether Techo committed fraud. The record before the Court suggests that the officer can decide the contract issues without deciding whether Techo committed fraud; thus the contracting officer will not "usurp" the Court's authority to hear the fraud issues.

The Federal Circuit's decision in *Joseph Morton Co., Inc. v. United States*, 757 F.2d 1273 (Fed.Cir.1985) is further support that the government's unprecedented broad reading of the fraud exception to the CDA is unwarranted. In that case, the government filed fraud counterclaims in a suit filed by a contractor under the CDA for wrongful termination of contract. The court held that the counterclaims did not fall within the "involves fraud" exception to the CDA—even though the counterclaims themselves were for fraud—because at the time the counterclaims were filed the contractor had already pled guilty to fraud and thus the only real issue remaining in the case was the amount of money owed by the contractor. The Federal Circuit concluded that since that particular issue did not involve fraud, the fraud exception did not apply and the government would have to pursue its counterclaims under the CDA. *Id.* at 1281.

*Joseph Morton* thus implicitly holds that the fraud exception does not apply if a claim can be decided under the CDA without a determination of fraud. As is explained above, a contracting officer does not have to decide whether Techo engaged in fraud in order to resolve the government's contract claims against CSC and Anteon. The issue on the contract claims is whether defendants CSC and Anteon were paid money for work which was not performed and how much money, if any, they were overpaid. Moreover, as in *Joseph Morton*, the parties accused of fraud have already pled guilty. Thus, the fraud is conclusively established and a contracting officer need not revisit the issue.

Finally, Congress's intent in establishing the CDA—establishing a comprehensive scheme of administrative and legal remedies in specialized courts designed to facilitate administrative resolution of contract claims—will be frustrated if the fraud exception is read so broadly as to encompass any claim by a contractor that is related to fraud, regardless of how remotely connected the fraud is to the claim and regardless of whether the contractor himself is accused of engaging in or even knowing of the fraud. In such cases, a contract claim defendant not accused of fraud will be forced to endure the expense and delay of an action in federal court even though the defendant is not itself accused of engaging in any wrongdoing. The Court declines to read the CDA fraud exception so broadly as to permit such a situation.

## D. The Payment By Mistake And Unjust Enrichment Claims Are Also Governed By The CDA

■ The government's claims against CSC and Anteon for unjust enrichment and payment by mistake are "claims relating to a contract" within the meaning of the CDA and thus, like the government's breach of contract claims, are governed exclusively by the CDA. *See United States v. Dan Bunch Enter., Inc.*, 1992 U.S. Dist. Lexis 22570 *5 (E.D.Cal. May 19, 1992).

## CONCLUSION

For the foregoing reasons the Court concludes that the government has not met

its burden of proving that the Court has subject matter jurisdiction of its claims against defendants CSC and Anteon. Accordingly, the motions to dismiss for lack of subject matter jurisdiction are GRANTED. The government is ordered in advise the Court in writing by October 27, 1999 as to what issues remain in this action and how this matter should proceed in light of the Court's ruling herein.

**IT IS SO ORDERED.**