**GENERAL MARINE CONSTRUCTION CORP., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**UNITED STATES of America, Third–Party Plaintiff,**

v.

**PHILLIPS CARTNER & CO., INC., Third–Party Defendant.**

Civ. A. No. 89–0215–WD.

United States District Court, D. Massachusetts.

March 26, 1990.

As Revised May 31, 1990.

Joseph S. Mahaley, Patton, Boggs & Blow, Washington, D.C., A. Hugh Scott, Choate, Hall & Stewart, Boston, Mass., for third-party defendant.

Thomas F. Murphy, Jr., Boston, Mass., for plaintiff.

Paul Levenson, Asst. U.S. Atty., Boston, Mass., Gary A. Pasternak, U.S. Army

Corps of Engineers, N.E. Div., Waltham, Mass., for U.S.

## MEMORANDUM AND ORDER

WOODLOCK, District Judge.

This case involves a potential collision between the procedures mandated by the Contract Disputes Act of 1978, 41 U.S.C. §§ 601 *et seq.*, and those mandated by Fed. R.Civ.P. 14(c), embodying longstanding policies of the admiralty regime.

■ Under the Contract Disputes Act ("CDA"), claims arising from a contract between the United States government and a private entity must first be presented to a contracting officer for resolution, *see generally* 41 U.S.C. § 605(a), before the claim may be brought to a federal court.

Fed.R.Civ.P. 14(c) by contrast reflects "[o]ne of the prominent aspects of the admiralty procedure," the "liberal third party practice." 6 C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1465 at 481 (1990). The "distinctiveness [of this practice] is exemplified by the long-standing practice of permitting defendant to implead someone who may be directly liable to plaintiff." *Id.*

The potential for collision looms here even though the original plaintiff, General Marine Construction Co., is not bound by the Contract Disputes Act. This is because the original defendant, the United States, which is bound by the CDA, has joined another party subject to the CDA—a private contractor, Phillips Cartner & Co., Inc. —as a third-party defendant.

The United States presents Phillips Cartner as a party "who may be wholly or partly liable, either to the plaintiff [General Marine] or to the third-party plaintiff [the government] by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or judgments." Fed.R.Civ.P. 14(c). Phillips Cartner, however, asserts that any dispute involving. it and the government must be resolved under the CDA. Accordingly, Phillips Cartner contends the action against it should be dismissed under Fed.R.Civ.P. 12(b)(1) because

this court is without subject matter jurisdiction—at least at this time—to hear it.

The problem for resolution is whether the imminent collision between the two procedural regimes may be avoided by charting a course for the CDA and for admiralty practice to give an adequate right of way to each.

## I

The original complaint alleges harm caused to the boats and business of plaintiff General Marine, a Maine corporation engaged in the business of marine construction, including dredging, by the failure of dredge inspectors to appear in a timely manner to supervise its disposal operations. The defendant/third-party plaintiff United States through the Army Corps of Engineers requires the presence of inspectors as an element of compliance with various dredging regulations, and had contracted with third-party defendant Phillips Cartner to provide dredge inspectors in New England.

The complaint alleges that a number of vessels in General Marine's fleet were forced to sit idly by until the Corps' inspector appeared. Specifically, General Marine asserts that on February 2, 1987, December 12, 1987, and January 7, 1988, the fleet was engaged on a marine construction project at Kennebunkport, Maine, under the auspices of a Corps permit; when the inspector was late or failed altogether to appear, General Marine suffered losses in the nature of demurrage (including standby time for towing vessels, barges, dump scows, cranes, and labor). Because the inspector did not timely appear, the fleet missed favorable sailing tides and currents, causing further harm to General Marine.

General Marine claims to have lost $25,-000 because of the "Corps' negligence, lack of skill, imprudent seamanship and failure to properly supervise its employed and contractor personnel." General Marine thus sued the United States pursuant to the Suits in Admiralty Act, 46 U.S.C. §§ 741–752, and Fed.R.Civ.P. 9(h).

The United States responded by filing a third-party complaint pursuant to Fed.R. Civ.P. 14(c) and 28 U.S.C. § 1345, casting blame for any harm to General Marine upon Phillips Cartner. The Corps had entered into a contract with Phillips Cartner, a Virginia corporation, on December 8, 1986, to furnish qualified inspectors to witness the disposal of dredge materials at sea and provide daily reports of disposal operations. A day or so before each of the dates in question—February 2 and December 12, 1987, and January 7, 1988—the Corps ordered Phillips Cartner to provide inspectors to accompany General Marine's disposal voyages. Phillips Cartner allegedly failed to do so in a timely manner, and the United States accordingly seeks either (1) that any judgment for General Marine be satisfied directly by Phillips Cartner or (2) a declaration that the United States is entitled to contribution from Phillips Cartner.

## II

■ Phillips Cartner argues that the only duty it allegedly breached arises from its contract with the Corps,[1] and that all claims arising from the contract are governed by the Contract Disputes Act. While the United States and General Marine in opposition seek to characterize the underlying claim as a maritime tort, Phillips Cartner is clearly correct in characterizing the claim at least equally as one "relating to" its government contract.[2] Phillips Cartner contends, and the United States does not dispute, that the CDA mandates that claims relating to such a contract be resolved according to procedures laid out in the statute. Those procedures include initial submission to a contracting officer, a step not taken here.

Phillips Cartner's argument is that unlike General Marine's original complaint against the United States, which Phillips Cartner concedes sounds generally in admiralty, the third-party complaint of the United States sounds specifically in government contract, and so jurisdiction is governed by the CDA—and is not proper in this court at least until review by the contracting officer.

No party disputes that the purpose of the CDA is to centralize the adjudication of government contract disputes, *McDonnell Douglas Corp. v. United States*, 754 F.2d 365, 371 (Fed.Cir.1985); no one disputes that adherence to the administrative procedures of the CDA is a jurisdictional prerequisite to judicial review in matters governed by the CDA, *Great Lakes Educ. Consultants v. Fed. Emerg. Manage.*, 582 F.Supp. 193, 195 (W.D.Mich.1984); and no one disputes that the CDA binds the government to submit disputes to a contracting officer before litigation, just as it binds the parties with whom the government contracts, *Joseph Morton Co., Inc. v. United States*, 757 F.2d 1273, 1276 (Fed. Cir.1985).

However, the United States and General Marine do dispute that the third-party complaint is governed by the CDA. They oppose the motion to dismiss the third-party complaint on the grounds that under Fed. R.Civ.P. 14(c), the action now proceeds as if it had been commenced directly against the third-party defendant as well as against the third-party plaintiff. In other words, by bringing its third-party complaint, the United States has made this a law suit in which Phillips Cartner can be held directly liable to General Marine for the admiralty claim alleged.

---

**1.** Phillips Cartner also contends that General Marine's claim is without merit, and that any harm arose from General Marine's failure to comply with required notification procedures. I do not address this contention, however, because in this context "the pleadings are to be taken as true and construed in a light most favorable to the party opposing the motion." *Great Lakes Educ. Consultants v. Fed. Emerg. Manage.*, 582 F.Supp. 193, 194 (W.D.Mich.1984) (citations omitted).

**2.** Whether characterized as a maritime tort or government maritime contract, the General Marine claim is plainly one within the traditional admiralty jurisdiction. *See generally DeLovio v. Boit*, 7 Fed.Cas. 418, 443–44 (C.C.D.Mass.1815) (No. 3,776) (Story, J.). Phillips Cartner does not dispute this point.

As a matter of law without regard to the CDA, the government's position appears watertight.

Under Fed.R.Civ.P. 14(c), a defendant in admiralty may implead a third-party defendant and require the third party to answer the plaintiff's complaint as well as the third-party complaint.... Rule 14(c) thus differs from Rule 14(a) in which the third-party defendant answers only the third-party complaint.... When the admiralty defendant elects to require the third-party defendant to answer the plaintiff's complaint directly, the court treats the action as if the plaintiff had commenced it against the defendant and third-party defendant jointly. The plaintiff may then proceed to judgment against the third-party defendant directly.

*Campbell Industries, Inc. v. Offshore Logistics Intern., Inc.*, 816 F.2d 1401, 1406 (9th Cir.1987) (citations omitted). *See also Riverway Co. v. Trumbull River Services, Inc.*, 674 F.2d 1146, 1154 (7th Cir.1982).[3]

Of course, this motion cannot be decided without regard to the CDA. But in determining how best to avert a collision between the ancient admiralty regime and the more recent CDA procedural scheme, a court must exercise some flexibility, precisely because of the special treatment afforded to admiralty cases.[4] "In areas preempted by legislation, federal courts may not establish principles in derogation of the congressional mandate. However, in the framework of admiralty jurisdiction, federal courts may still play an active role in interpreting statutes, filling gaps, and coordinating legislation with the general maritime law." T.J. SCHOENBAUM, AD-MIRALTY & MARITIME LAW § 4–1, at 122 (1987).

Here, Congress itself coordinated one aspect of the CDA with maritime law to the extent that it allowed appeal from the decision of a contracting officer to the District Court rather than to the Claims Court. 41 U.S.C. § 603. *See generally Whitey's Welding and Fabrication, Inc. v. United States*, 5 Cl.Ct. 284 (1984). Congress thus acknowledged the special status of traditional District Court admiralty jurisdiction over maritime government contracts when it included such contracts within the scope of the CDA. It appears clear, in short, that Congress did not intend to displace traditional admiralty procedures any more than would be necessary to accommodate the basic structure of the CDA procedural scheme.

Such an accommodation can be undertaken only with full recognition of long-standing principles of general maritime procedural law. Rule 14(c) expresses the congressionally approved intention to maintain liberal joinder practices in admiralty actions. Rule 14(c) clearly means that an action properly commenced in admiralty should be permitted to comprehend, consistent with principles of personal jurisdiction, related claims to which additional parties may be joined "on account of the same transaction, occurrence, or series of transactions or occurrences." Fed.R.Civ.P. 14(c).

Beyond dispute, the original action against the United States sounds in admiralty, and does not trigger the CDA. Also beyond dispute, the CDA would not apply to a case brought directly by General Marine against Phillips Cartner.[5] Although

---

**3.** Under Rule 14(c), Phillips Cartner may be treated essentially as a joint tortfeasor, and the maritime rule allowing contribution is "well-established." *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 113, 94 S.Ct. 2174, 2178, 40 L.Ed.2d 694 (1974).

**4.** It is largely for this reason that the cryptic reference by Phillips Cartner to a privileged status for government contractors as evidenced in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) has no bearing here. Unlike *Boyle*, this case does not involve conflict between federal interests and subordinate state law. Rather this case involves the relative priority and interplay of two competing federal interests, the regulation of admiralty practice and the regulation of federal government contracts.

**5.** Because it is not a party to the Phillips Cartner contract with the Army Corps, General Marine has no direct access to the CDA process to pursue a claim against Phillips Cartner. And it is by no means clear that the United States would press the General Marine claim in the CDA process promptly, if at all. Like Phillips Cartner, *see* note 1 *supra*, the United States

recognizing the importance of the CDA in establishing the proper mode of resolving conflicts arising out of government contracts, I am of the view the liberal joinder policy expressed by Rule 14(c) counsels that I treat this action as arising out of General Marine's separate initiatory admiralty claim, to which the contract between the United States and Phillips Cartner is not procedurally dispositive.

Rule 14(c), embodying the longstanding liberal joinder policy of maritime law, means that Phillips Cartner is treated as if sued directly on the admiralty theory pressed by General Marine rather than on the CDA-governed grounds that an independent suit by the United States would have involved. In other words, the United States comes on board as third-party plaintiff in the shoes of General Marine, to whom the CDA does not apply.

To be sure, if the original complaint involved parties bound by—and a dispute within—the CDA, Phillips Cartner would be correct that submission to a contracting officer is a necessary jurisdictional prerequisite. This is because Congress "rather than completely excluding maritime contracts from the CDA, simply vests appeals from the administrative determination of claims in the district courts, rather than in the Court of Claims or the Court of Appeals for the Federal Circuit." *River & Offshore Services Co. v. United States*, 651 F.Supp. 276, 281 (E.D.La.1987) (citations omitted). However, within the framework of District Court admiralty jurisdiction that provided the forum for this case as initiated, I conclude the historic course charted by Rule 14(c) should not be altered by the cross-currents of the CDA's new procedural scheme. To conclude otherwise would result in the necessity of pursuing separate actions relating to plaintiff's initiatory claim; that result would clearly defeat the purpose of Rule 14(c).[6]

■ In short, I hold that once a case is properly commenced as an admiralty matter in the District Court, Rule 14(c) governs related claims even if the issues raised by those related claims, standing alone, would otherwise be subject to the CDA procedural scheme.

### III

For the reasons more fully set forth above, I find that this Court has subject matter jurisdiction over the third-party claim and, accordingly, the motion to dis-

---

views the General Marine claim as meritless. While apparently not under a statutory obligation to certify that its claim before the contracting officer "is made in good faith, that the supporting data are accurate and complete to the best of [its] knowledge and belief, and that the amount requested accurately reflects the contract adjustment," *cf.* 41 U.S.C. § 605(c)(1) (requiring such certification of government contractor for claims of more than $50,000), the government plainly has an implied obligation not to bring claims to the contracting officer that it views as meritless. Thus, the earliest that the Rule 14(c) cause of action now framed in this case could reach the CDA process for resolution is when any claim by General Marine is reduced to a judgment. That is not the procedure the drafters of Fed.R.Civ.P. 14(c) viewed as "clearly desirable." *See* 1966 Advisory Committee's Note to Fed.R.Civ.P. 14(c).

**6.** Phillips Cartner suggests that because it has another, but unrelated, claim under its contract with the Army Corps of Engineers, it will "either have to cross-claim against the United States for this currently pending appeal claim arising under the same Contract, or it [will] be required to litigate claims arising under the same contract in two different forums." *Reply of Third–Party Defendant Phillips Cartner & Company, Inc. To The Oppositions of Plaintiff And Third–Party Plaintiff to Phillips Cartner's Motion to Dismiss* at 5–6.

Whether a concededly unrelated claim can fairly be said to be "on account of the same transaction occurrence, or series of transactions or occurrences" as the claim which initiated the admiralty claim in the District Court—a requirement under Fed.R.Civ.P. 14(c)—is questionable particularly here where the parties were proceeding before an administrative board prior to the time the District Court action was commenced.

To be sure, application of Rule 14(c) here means that Phillips Cartner must litigate unrelated claims arising out of the same contract in two different forums. That, however, does not seem an intolerable burden where it will insure that all aspects of each separate claim will be resolved within a consistent procedural regime and the United States will, in any event, face the same burden irrespective of whether Phillips Cartner's motion to dismiss is allowed or not.

miss the third-party complaint is hereby DENIED.