**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**February 28, 2001**

Charles R. Fulbruge III
Clerk

REVISED, MARCH 29, 2001

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-30799

_____

TEXACO EXPLORATION AND PRODUCTION COMPANY
AND MARATHON OIL COMPANY,

Plaintiffs-Appellants,

versus

AMCLYDE ENGINEERED PRODUCTS COMPANY, Inc., ET AL,

Defendants.

_____

AMCLYDE ENGINEERED PRODUCTS COMPANY, Inc.,

Third-Party Plaintiffs,

versus

J. RAY McDERMOTT, Inc.,

Third-Party Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

Before GOODWIN[*], GARWOOD, and JONES, Circuit Judges.

_____

[*]     Circuit Judge of the United States Court of Appeals of the Ninth
Circuit, sitting by designation.

EDITH H. JONES, Circuit Judge:

At issue in this appeal is whether to carve out an exception to the Federal Arbitration Act (FAA), 9 U.S.C. § 3, where, in admiralty cases, its enforcement would deny a party the ability to implead a third-party defendant pursuant to Federal Rule of Civil Procedure 14(c). We conclude that the policy of liberal joinder in maritime cases embodied in Rule 14(c) does not supersede the statutory right to enforce contractual arbitration guaranteed by the FAA. The district court's decision to the contrary must be reversed and remanded for the entry of a stay of litigation between Texaco and McDermott, pending arbitration.

## BACKGROUND

This case arises from an accident during the construction of Texaco's Petronius oil and gas production facility in the Gulf of Mexico off the coast of Alabama. A barge-mounted crane failed, causing a deck module to fall into the sea. The crane involved in this incident was owned and operated by J. Ray McDermott, Inc. ("McDermott") and had been designed and manufactured by AmClyde Engineered Products Company, Inc. ("AmClyde").

In the wake of the accident, Texaco sued AmClyde, Williamsport Wirerope Works, Inc., the manufacturer of the failed wire rope line, Lowrey Brothers Rigging Center, Inc., the seller of the failed line, and Lloyd's Register of Shipping, the classification society that inspected and certified the crane and

2

line.  Because of a mandatory arbitration clause in its contract with McDermott, Texaco did not file a complaint against McDermott.

The Texaco-McDermott contract includes a dispute resolution clause stating that "[t]he Parties shall reserve any controversy or claim, whether based in contract, tort or otherwise, arising out of, relating to or in connection with the Agreement" pursuant to a mandatory three-step process consisting of negotiation, mediation, and binding arbitration.  This provision is mandatory.

Texaco attempted to avail itself of this alternative dispute resolution provision, but was frustrated when AmClyde tendered McDermott as a third-party defendant under Federal Rule of Civil Procedure 14(c).  The rule provides for liberal joinder in admiralty actions.  Texaco moved to strike the joinder.  Before the district court ruled on the motion to strike, McDermott moved for partial summary judgment against Texaco.  Texaco opposed this motion, asserting that the district court was obliged by section 3 of the FAA to stay the proceedings between Texaco and McDermott pending their arbitration.  After hearing argument, the district court denied Texaco's motion to strike, denied its request for stay and granted McDermott's motion.  Texaco now appeals the district court's denial of the requested stay.

## DISCUSSION

Appellate review of the district court's refusal to stay litigation pending arbitration is de novo. See Hornbeck Offshore Corp. v. Coastal Carriers Corp., 981 F.2d 752, 754 (5th Cir. 1993); Neal v. Hardee's Food Systems, Inc., 918 F.2d 34, 37 (5th Cir. 1990).

As an initial matter, McDermott argues that Texaco's appeal is not properly before this court. McDermott contends that Texaco never formally moved for a stay and that it never had a chance to oppose Texaco's informal "request" for a stay. We disagree. While Texaco did not file any document captioned "Motion to Stay," Texaco gave both written and oral notice adequate to apprise both McDermott and the district court that it was requesting a stay and of its supporting arguments. Five pages of Texaco's memorandum in opposition to McDermott's motion for partial summary judgment are dedicated to the stay issue. Additionally, the record indicates that Texaco moved for a stay at the June 21, 2000 oral argument before the district court and that this motion was promptly denied without discussion.[1] McDermott did not contest

---

[1] At that hearing, Texaco urged that "[u]nder the Federal Arbitration Act, any claim that we make . . . against McDermott, must be stayed pending that arbitration." The district court then stated that Rule 14(c) can not be circumvented, impliedly denying Texaco's motion to strike the Rule 14(c) tender. Without further discussion of the stay from either Texaco or McDermott, the district court announced its grant of partial summary judgment for McDermott. Texaco requested a clarification of the court's ruling, specifically asking if the district court was "also denying our request that the matter be stayed pending arbitration?" The district court responded "correct." Texaco then

4

the stay issue during the hearing because the district court had already denied relief. Procedurally, the issue is properly preserved and fully briefed for this court.

Moving to the merits, the Supreme Court has observed that the FAA "is a congressional declaration of a liberal policy favoring arbitration." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). Further, there is a "strong federal policy in favor of enforcing arbitration agreements." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 217 (1985). The language of the FAA is unambiguous:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. The FAA specifically applies to both maritime transactions and interstate commerce.[2] An application for

---

stated its desire to appeal the denial of the stay immediately and the district court invited Texaco to prepare an appropriate order. The order stated that Texaco's "instanter motion in open court . . . to stay claims . . . [is denied]." Taken together with Texaco's extensive briefing on the stay issue in its memorandum opposing McDermott's motion for partial summary judgment, there is no doubt that Texaco sufficiently presented a motion to stay. See Fed. R. Civ. P. 7(b)(1).

[2] The FAA dictates that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Act defines "maritime transaction" as "charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction." 9 U.S.C. § 1. So regardless of whether the Petronius

5

arbitration by either party under section 3 "requests the district court to refrain from further action in a suit pending arbitration, and requires the court to first determine whether there is a written agreement to arbitrate between the parties, and then whether any of the issues raised are within the reach of the agreement." Midwest Mechanical Contractors, Inc. v. Commonwealth Construction Co., 801 F.2d 748, 750 (5th Cir. 1986). "[I]f the issues in a case are within the reach of that [arbitration] agreement, the district court has no discretion under section 3 to deny the stay." Hornbeck, 981 F.2d at 754.

Here, an arbitration agreement governed by section 3 of the FAA exists between Texaco and McDermott. The arbitration clause is one this court has termed a "broad" agreement because it covers "any dispute" between the parties. As a result, any litigation arguably arising under such a clause should be stayed pending the arbitrator's decision as to whether the dispute is covered. Id. at 754-55. See also Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985); Mar-Len of La., Inc. v. Parsons-Gilbane, 773 F.2d 633, 635 (5th Cir. 1985).[3]

---

construction contract is treated as a maritime transaction or simply as interstate commerce, the FAA applies.

[3] McDermott's request for a remand to determine the scope of arbitration conflicts with these authorities that squarely allow the arbitrator to initially make that decision where a clause is "broad."

6

In the absence of the Rule 14(c) exception carved out by the district court, the Texaco-McDermott dispute would have been subject to arbitration. However, the smooth operation of the arbitration process was disrupted by AmClyde's Rule 14(c) tender of McDermott as a third-party defendant to Texaco. McDermott contends, and the district court accepted, that Rule 14(c) "trumps" section 3 of the FAA, preventing enforcement of the arbitration clause.

The logical basis for the district court's conclusion is unclear. There seems upon analysis to be no real conflict between Rule 14(c) and the FAA.

Rule 14(c) was designed to expedite and consolidate admiralty actions by permitting a third-party plaintiff to demand judgment against a third-party defendant in favor of the plaintiff. As a consequence, the plaintiff is then required to assert his claims directly against the third-party defendant. See 6 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1465 (2d. ed. 1990). This unique liberal joinder policy served to reduce the possibility of inconsistent results in separate actions, eliminate redundant litigation, and prevent a third party's disappearing if jurisdiction and control over the party and his assets were not immediately established. See id. at 481.

The FAA's purpose, as has been noted, is to enforce private arbitration agreements "even if the result is 'piecemeal

7

litigation,' at least absent a countervailing policy manifested in another federal statute." <u>Dean Witter Reynolds Inc. v. Byrd</u>, 470 U.S. 213, 219-20 (1985). As a tangential benefit, however, arbitration usually provides a speedier, more economical form of dispute resolution.

These two policies do not necessarily conflict. If arbitration goes forward between Texaco and McDermott, it need not hold up or interfere with the admiralty litigation between Texaco and the other defendants. Apportionment of liability exists whether or not McDermott is impleaded under Rule 14(c). Moreover, the essential functions of Rule 14(c) are accomplished because McDermott will have to face Texaco directly as a defendant, albeit in arbitration.

A conflict arises only if Rule 14(c) is held to thwart enforcement of the arbitration agreement pursuant to the district court's order. That result allows AmClyde, though not a party to the arbitration agreement, to override the Texaco-McDermott contract and fundamentally thwart the purposes of the FAA. Further, to carve out a Rule 14(c) exception to the FAA could severely undermine maritime arbitration clauses, inspiring abuse and opportunistic behavior, as third parties are allowed or encouraged to do what the parties to a contract themselves are not: to put aside a mandatory arbitration provision and force litigation. It is perhaps no accident that AmClyde did not even

file a brief in this appeal and by its silence rests on McDermott's arguments against enforcing the Texaco-McDermott arbitration clause.

There is little caselaw to guide our analysis. However, in the only previous decision to analyze this precise issue, the court refused to create a Rule 14(c) exception to the FAA on essentially similar facts. Shipping Corp. of India v. American Bureau of Shipping, No. 84 CIV. 1920, 1989 WL 97821 (S.D.N.Y. Aug. 17, 1989). The India court concluded that an outside party cannot use Rule 14(c) to override an arbitration agreement previously reached between a plaintiff and a third-party defendant.

The cases cited by McDermott in favor of carving out a Rule 14(c) exception to section 3 of the FAA are either unpersuasive or irrelevant. In General Marine Construction Corp. v. United States, 738 F.Supp. 586 (D. Mass. 1990), the court held that "once a case is properly commenced as an admiralty matter in the District Court, Rule 14(c) governs related claims even if the issues raised by those related claims, standing alone, would otherwise be subject to the CDA [Contract Dispute Act] procedural scheme." Id. at 590. General Marine has no bearing on the instant case for three reasons: 1) it involves the Contracts Disputes Act, 41 U.S.C. § 605(a), not the FAA; 2) it does not involve a motion to stay proceedings, but rather a motion to dismiss claims resulting from a Rule 14(c) tender; and 3) the claims for which dismissal was

sought were not covered by the CDA. General Marine makes no mention of the FAA or the strong presumption in favor of arbitration.

McDermott also invokes National Gypsum Co. v. NGC Settlement Trust & Asbestos Management Corp., 118 F.3d 1056, 1069 (5th Cir. 1997), in which this court held that a bankruptcy court may refuse one party's demand to arbitrate if the cause of action is "derived entirely from the federal rights conferred by the Bankruptcy Code . . . ." McDermott cites National Gypsum for the general proposition that the FAA is not absolute and can yield, upon a proper showing, to other discrete bodies of federal law. But McDermott ignores the fact that under the Supreme Court case controlling National Gypsum, Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987), "[t]he burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." McDermott does not even attempt to bear this burden and has not made such a showing on behalf of Rule 14(c).

McDermott's reliance on Zimmerman v. Int'l Companies & Consulting, Inc., 107 F.3d 344, 345-46 (5th Cir. 1997) is also misplaced. Zimmerman held that a defendant-insurer with the contractual right to arbitrate with the insured cannot force a plaintiff who is not a party to the contract to arbitrate. Here

10

Texaco seeks only to compel McDermott, the party to the contract containing the arbitration clause, to arbitrate.

Nor does Pensacola Construction Co. v. St. Paul Fire and Marine Insurance Co., 705 F.Supp. 306 (W.D. La. 1989), support McDermott's position. The plaintiff in Pensacola sued two defendants, only one of which had an arbitration agreement with the plaintiff. The Pensacola court allowed the defendant with the contractual right to arbitration to stay the plaintiff's action against it, but the court refused to stay the proceeding between the plaintiff and the other defendant. Id. at 308. Pensacola would be relevant if Texaco had sought to stay the proceedings involving AmClyde and the other defendants. As Texaco only wants to stay the proceedings between itself and McDermott, the two signatories to the relevant contract, Zimmerman and Pensacola actually support Texaco's position.[4]

For these reasons, we conclude that the district court erred in refusing to stay the Texaco-McDermott aspect of this controversy pending arbitration.[5]

McDermott alternatively contends that Texaco has waived its right to arbitrate. Normally, waiver occurs when a party

---

[4] McDermott's reliance on Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n., Ltd., 859 F.Supp 669 (S.D.N.Y. 1994), is similarly misplaced.

[5] It follows that the district court's partial summary judgment in favor of McDermott must be vitiated by this ruling.

initially pursues litigation and then reverses course and attempts to arbitrate, but waiver can also result from "some overt act in Court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." Subway Equipment Leasing Corp. v. Forte, 169 F.3d 324, 329 (5th Cir. 1999). There is a strong presumption against waiver, and any doubts thereabout must be resolved in favor of arbitration. Id. at 326.

McDermott does not assert that Texaco attempted to litigate any claims against it stemming from the crane line collapse. To the contrary, Texaco did not sue McDermott for its role in this accident and has tried to compel arbitration. Instead, McDermott's waiver argument is based on Texaco's actions in other litigation, Shell Offshore, Inc. Et. Al. v. Heerema Offshore Construction Group, Inc. Et Al., Civil Action No. H-98-1090, S.D. Texas.

In Shell, Texaco has alleged certain antitrust violations against McDermott and other defendants relating to the Petronius construction contract and other Gulf projects. However, Shell is only tangentially related to the crane accident. On January 7, 2000 McDermott requested arbitration relating to the Petronius contract and the crane accident, claiming that Texaco was wrongfully withholding payment of some $23 million dollars. Because Texaco wanted to use certain antitrust arguments in the arbitration against McDermott and because those antitrust issues

12

were already before the district court in <u>Shell</u>, Texaco petitioned the <u>Shell</u> court to stay the <u>Petronius</u> arbitration pending the outcome in <u>Shell</u>. The district court declined to stay the arbitration altogether, but it did limit the scope of arbitration to the <u>Petronius</u> contract alone, thereby keeping Texaco's antitrust defenses out of the hands of the arbitrator and before the district court.

McDermott contends that Texaco's request for a stay pending the outcome of the <u>Shell</u> antitrust litigation satisfies the <u>Subway</u> test and constitutes a waiver of arbitration. While it is true that Texaco's actions delayed the arbitration proceeding and narrowed its scope, Texaco never demonstrated the requisite desire to resolve the arbitrable issues related to the crane accident through litigation rather than arbitration. In order to waive arbitration, a party must "do more than call upon unrelated litigation to delay an arbitration proceeding." <u>Subway</u>, 169 F.3d at 328. This is precisely what Texaco has done by requesting a stay of arbitration pending the outcome of the ongoing and largely unrelated antitrust lawsuit. Moreover, mere delay falls far short of the waiver requirements of <u>Subway</u>. <u>See</u> <u>id</u>. at 326. Texaco never manifested any desire to litigate rather than to arbitrate its claims against McDermott stemming from the December 3, 1998 incident.

13

## CONCLUSION

Given the broad and unequivocal language of section 3 of the Federal Arbitration Act, this court refuses to create a Rule 14(c) exception that would allow third parties unilaterally to nullify an arbitration clause. Enforcing the arbitration clause does not conflict with Rule 14(c) on the facts before us, whereas the rigid enforcement of Rule 14(c) would utterly thwart the policy of the FAA. In light of our analysis, and because Texaco has not waived its right to arbitrate, this case is remanded to the district court for the issuance of an order staying this litigation pending the outcome of the contractually mandated arbitration. This stay is limited in scope to the proceedings between Texaco and McDermott and should not affect Texaco's actions against AmClyde or the other defendants. **REVERSED** and **REMANDED.**

14