**UNITED STATES of America ex rel. David R. VAVRA and Jerry Hyatt, Plaintiffs,**

v.

**KELLOGG BROWN & ROOT, INC., Bob Bennett, Wesco International, Inc., Phil Elders, and Panalpina, Inc., Defendants.**

Civil Action No. 1:04–CV–42.

United States District Court, E.D. Texas.

Feb. 8, 2011.

Michael Wayne Lockhart, U.S. Attorney's Office, Greg M. Dykeman, Michael Thomas Bridwell, Strong Pipkin Bissell & Ledyard, Mitchell A. Toups, Weller Green Toups & Terrell LLP, Beaumont, TX, Stanley E. Alderson, U.S. Department of Justice, Washington, DC, for Plaintiffs.

Karl S. Stern, Vinson & Elkins, Houston, TX, Craig D. Margolis, J. Randall Warden, Vinson & Elkins LLP, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

MARCIA A. CRONE, District Judge.

Pending before the court is Defendant Kellogg Brown & Root, Inc.'s ("KBR") Motion to Dismiss the Complaint of the United States (# 51). KBR seeks dismissal of the United States' claims pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). Having considered the pending motion, the submissions of the parties, the complaint, and the applicable law, the court is of the opinion that KBR's motion should be GRANTED IN PART and DENIED IN PART.

### I. *Background*

On January 21, 2004, Relators David Vavra and Jerry Hyatt (collectively, "Relators") filed this *qui tam* action against numerous defendants, including Kellogg Brown & Root, Inc.[1] Relators allege that KBR, which provides logistical support to the United States Army in Iraq, Afghanistan, and Kuwait under a government contract known as LOGCAP III,[2] engaged in

---

1. All claims against the other defendants in this suit have been dismissed, leaving KBR as the sole defendant.

2. LOGCAP is an acronym for the Logistics Civil Augmentation Program, a series of contracts whereby the Army enlists private contractors to perform non-combat services in support of military operations across the globe. KBR is the primary contractor on LOGCAP III and performs some of its obli-

numerous kickback schemes involving the award and performance of subcontracts to subcontractors Eagle Globe Logistics ("EGL") and Panalpina, Inc. ("Panalpina"), in violation of the False Claims Act ("FCA").[3] Specifically, Relators claim that from January 2002 to April 2005, KBR's Corporate Traffic Supervisor, Robert Bennett ("Bennett"), and other KBR employees accepted kickbacks of, *inter alia,* money, fees, gifts, meals, golf outings, and tickets to sporting and entertainment events (collectively, the "kickbacks") from EGL employee Kevin Smoot ("Smoot") and others in return for awarding subcontracts to EGL for the transport of U.S. military equipment and supplies into Iraq.[4] Relators similarly assert that Bennett accepted kickbacks from Panalpina's Grant Wattman and other employees.

On May 5, 2010, the United States filed a Notice of Election to Intervene "in that part of the action that alleges unlawful payments to employees of" KBR by EGL and Panalpina and, on August 2, 2010, filed its complaint-in-intervention asserting several causes of action.[5] Specifically, the United States alleges that KBR: (1) violated the False Claims Act ("FCA") by billing the United States for subcontract costs that were tainted by kickbacks; (2) knowingly violated the AKA; (3) breached its contract with the Army by accepting kickbacks; (4) was unjustly enriched by

its statutory violations; and (5) received payment from the government for its subcontract costs, which the United States mistakenly believed were for services provided in accordance with the contract's terms and applicable law.

KBR filed the instant motion to dismiss on October 1, 2010. KBR argues that the United States' complaint should be dismissed pursuant to the provisions of the FCA because it fails to: (1) link the alleged kickbacks to a false claim for payment made to the government; (2) allege the particular details of a scheme by KBR to submit false claims; or (3) plead the requisite scienter. KBR also claims that the United States improperly asserts an AKA violation under 41 U.S.C. § 55(a)(1), which KBR maintains does not apply to prime contractors. KBR further contends that the United States' common law claims for breach of contract, unjust enrichment, and payment by mistake fall under the exclusive jurisdiction of the Armed Services Board of Contract Appeals ("ASBCA") or the Court of Federal Claims pursuant to the Contract Disputes Act ("CDA"). Finally, KBR avers that the United States' quasi-contract claims for unjust enrichment and payment by mistake should be dismissed because an express contract exists between the parties.

gations under the agreement through subcontractors.

**3.** These allegations are asserted in Relators' Second Amended Complaint, which is identical to their Original and First Amended Complaints, except that it removed several causes of action and deleted certain defendants.

**4.** Smoot and Bennett pleaded guilty to violations of the Anti Kickback Act ("AKA") related to these allegations in the United States District Court for the Central District of Illinois in July 2007 and August 2008, respectively.

**5.** Because the United States has intervened in Relators' claim against KBR, the United States is deemed to stand in the place of the Relators in this action. 31 U.S.C. § 3730(b)(4). As such, its complaint-in-intervention serves as an amendment to the Relators' Third Amended Complaint and is the operative pleading in this case. *In re Pharm. Indus. Average Wholesale Price Litig.,* 498 F.Supp.2d 389, 397 (D.Mass.2007); *United States ex rel. Purcell v. MWI Corp.,* 254 F.Supp.2d 69, 75 (D.D.C.2003).

## II. *Analysis*

### A. *KBR's Attack on the Court's Jurisdiction*

■ " 'When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits ....' " *In re Great Lakes Dredge & Dock Co.,* 624 F.3d 201, 209 (5th Cir.2010) (quoting *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001), *cert. denied,* 536 U.S. 960, 122 S.Ct. 2665, 153 L.Ed.2d 839 (2002)); *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977) (holding that when there is both a want of jurisdiction under Rule 12(b)(1) and a failure to state a claim on which relief can be granted under Rule 12(b)(6), the trial court should dismiss on the jurisdictional ground without reaching the question of failure to state a claim). "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming,* 281 F.3d at 161 (citing *Hitt,* 561 F.2d at 608); *accord In re Great Lakes Dredge & Dock Co.,* 624 F.3d at 209. KBR avers that this court lacks subject matter jurisdiction over the United States' claims for breach of contract (count three), unjust enrichment (count four), and payment by mistake (count five) because these common law contractual claims are subject to the exclusive jurisdiction of the ASBCA and the Court of Federal Claims under the CDA. The United States responds that these claims "involve fraud" and, therefore, fall within this court's jurisdiction.

### 1. *Rule 12(b)(1) Standard*

■ A motion to dismiss filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the federal district court. *See* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and, absent jurisdiction conferred by statute or the Constitution, lack the power to adjudicate claims. *See Rasul v. Bush,* 542 U.S. 466, 489, 124 S.Ct. 2686, 159 L.Ed.2d 548 (2004); *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Griffin v. Lee,* 621 F.3d 380, 388 (5th Cir.2010); *Johnson v. United States,* 460 F.3d 616, 621 n. 6 (5th Cir.2006); *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir.), *cert. denied,* 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001). " ' "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." ' " *CleanCOALition v. TXU Power,* 536 F.3d 469, 473 (5th Cir.2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996))); *see Krim v. PcOrder.com, Inc.,* 402 F.3d 489, 494 (5th Cir.2005); *John Corp. v. City of Houston,* 214 F.3d 573, 576 (5th Cir.2000). "[S]ubject-matter jurisdiction cannot be created by waiver or consent." *Howery,* 243 F.3d at 919; *accord Gasch v. Hartford Accident & Indem. Co.,* 491 F.3d 278, 284 (5th Cir.2007); *In re TXNB Internal Case,* 483 F.3d 292, 298 n. 6 (5th Cir.), *cert. denied,* 552 U.S. 1022, 128 S.Ct. 613, 169 L.Ed.2d 393 (2007).

■ The burden of establishing federal jurisdiction rests on the party seeking to invoke it. *See Hertz Corp. v. Friend,* 559 U.S. 77, 94–96, 130 S.Ct. 1181, 1194, 175 L.Ed.2d 1029 (2010); *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006); *SmallBizPros, Inc. v. MacDonald,* 618 F.3d 458, 461 (5th Cir.2010). Indeed, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot,* 85 F.3d 244, 248 (5th Cir. 1996) (citing *Strain v. Harrelson Rubber Co.,* 742 F.2d 888, 889 (5th Cir.1984)); *ac-*

cord *Howery*, 243 F.3d at 916 (citing *Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673).

■■ In ruling on a Rule 12(b)(1) motion, a court may consider " '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.' " *Spotts v. United States*, 613 F.3d 559, 565 (5th Cir.2010) (quoting *St. Tammany Parish v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir.2009)); *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir.), *cert. denied*, 558 U.S. 826, 130 S.Ct. 154, 175 L.Ed.2d 39 (2009); *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir.2008); *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir.2008). When deciding a Rule 12(b)(1) motion, "[the district court] must accept all factual allegations in the plaintiff's complaint as true." *Den Norske Stats Oljeselskap As v. HeereMac V.O.F.*, 241 F.3d 420, 424 (5th Cir.2001), *cert. denied*, 534 U.S. 1127, 122 S.Ct. 1059, 151 L.Ed.2d 967 (2002); *see Lane*, 529 F.3d at 557.

### 2. *Summary of the CDA*

■ The CDA applies to contracts entered into by an executive agency of the United States and a contractor. *See* 41 U.S.C. § 602. Federal district courts lack jurisdiction over government contract claims that are subject to the Act. *See United States v. Rockwell Int'l Corp.*, 795 F.Supp. 1131, 1134 (N.D.Ga.1992) (citing *McDonnell Douglas Corp. v. United States*, 754 F.2d 365, 370 (Fed.Cir.1985)). Accordingly, under the CDA, claims between the United States and government contractors must first be decided by the contracting officer. 41 U.S.C. §§ 601(3), 605(a). The officer's decision may then be

appealed to an agency board of contract appeals or the Court of Federal Claims. 41 U.S.C. §§ 607(d), 609(c). The Act contains an exception, however, for "claims involving fraud," making such claims subject to the jurisdiction of federal district courts. 41 U.S.C. § 605(a). The dispute between the parties here centers upon whether the United States' contractual and quasi-contractual claims fall within the CDA's fraud exception.

■ The Act's fraud exception applies broadly to all claims "involving fraud," not just to "causes of action for fraud itself." *Rockwell Int'l Corp.*, 795 F.Supp. at 1135; *accord United States ex rel. Becker v. Tools & Metals, Inc.*, No. 3:05–CV–0627–L, 2009 WL 577604, at *9 (N.D.Tex. Mar. 5, 2009). Accordingly, where "the events, transactions, and contracts at issue in the lawsuit give rise to fraud allegations, the CDA no longer governs." *Rockwell Int'l Corp.*, 795 F.Supp. at 1135; *see Becker*, 2009 WL 577604, at *9.

■■ The United States' contractual claims allege that KBR breached its obligations under the LOGCAP III agreement and Federal Acquisition Regulation 52.253–7 by failing to prevent and report Bennett's and other KBR employees' acceptance of kickbacks. The same conduct forms the basis of the United States' FCA and AKA claims; namely, that kickbacks occurred during the execution of the corporation's duties under LOGCAP III, resulting in mistaken payment by the United States and unjust enrichment to KBR. Thus, the United States' contractual claims arise from the same "events, transactions, and contracts" that underlie the fraud claims against KBR. Accordingly, the CDA fraud exception applies, and jurisdiction is appropriate in this court.[6] *See Becker*,

---

6. The fact that KBR also attacks the United States' fraud claims pursuant to Rule 9(b) and Rule 12(b)(6) does not affect the foregoing analysis because the viability of fraud allegations does not bear on the court's lack of jurisdiction pursuant to the CDA. *See United*

2009 WL 577604, at *9 (finding that the relator's breach of contract and unauthorized payment claims were within the jurisdiction of the court where they arose from the same conduct as fraud allegations); *United States v. Menominee Tribal Enters.,* 601 F.Supp.2d 1061, 1078 (E.D.Wis.2009) (noting "[n]umerous district courts have confirmed that common law claims ... which arise from fact situations also involving the FCA" are not jurisdictionally barred by the CDA); *Rockwell Int'l Corp.,* 795 F.Supp. at 1138–39 (declining to dismiss unjust enrichment, payment by mistake, and breach of contract claims where claims related to alleged fraudulent activity); *United States v. JT Constr. Co., Inc.,* 668 F.Supp. 592, 594 (W.D.Tex.1987) (denying defendant's motion to dismiss on jurisdictional grounds where unjust enrichment claim arose from "same basic set of facts" as fraud claims).

## B. *Count One: The FCA*

In count one of its complaint, the United States claims that KBR violated the FCA by invoicing the government for services under LOGCAP III that were "tainted" by kickbacks. KBR argues that the United States' FCA allegations fail to state a claim for relief because the complaint: (1) does not link the alleged kickbacks to an inflated claim for payment made to the United States; fails to plead fraud with the necessary particularity; (3) does not plead the requisite scienter; and (4) lacks facts to support vicarious liability against KBR for the acts of its employees.

▮▮▮▮▮ "The FCA generally permits the government or a party suing on the government's behalf to recover for false claims made by the defendants to secure payment by the government." *United States ex rel. Doe v. Dow Chem. Co.,* 343 F.3d 325, 329 (5th Cir.2003). The FCA is a statutory cause of action intended to combat fraud against the government. *United States ex rel. Longhi v. Lithium Power Techs., Inc.,* 530 F.Supp.2d 888, 891 (S.D.Tex.2008). The statute imposes liability on any person who:

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government.

31 U.S.C. § 3729(a)(1), (2). The test for FCA civil liability is: (1) "whether 'there was a false or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due.'" *United States ex rel. Longhi v. Lithium Power Techs., Inc.,* 575 F.3d 458, 467 (5th Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 2092, 176 L.Ed.2d 722 (2010) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 376 (4th Cir.2008)).

"To state a claim under the FCA, subsection (a)(1), a relator must allege that the defendant 'knowingly' made a 'false or fraudulent claim' to the United States Government." *United States ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 376 (5th Cir.2004) (quoting 31 U.S.C.

*States ex rel. Mazur v. Gov't Bus. Servs. Grp.,* No. 802CV450T17MSS, 2005 WL 1572281 (M.D.Fla. June 30, 2005) (denying defendant's motion to dismiss relator's contractual claims pursuant to CDA but dismissing FCA claims for pleading deficiencies); *United States v.*

*Meredith Corp.,* No. 89–668–B, 1990 WL 375611 (S.D.Iowa June 15, 1990) (dismissing fraud claims pursuant to Rule 9(b) yet retaining jurisdiction to consider common law claims related to alleged fraud).

§ 3729(a)(1)). "To state a claim under subsection (a)(2), the relator must allege the defendant 'knowingly' made or used a 'false record or statement to get a false or fraudulent claim' paid by the government." *Id.* (quoting 31 U.S.C. § 3729(a)(2)).

### 1. *Rule 9(b) Standard*

■■■ "Claims brought under the FCA must comply with Rule 9(b), which requires pleading with particularity in cases alleging fraud." *Doe*, 343 F.3d at 328 (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997)); *accord United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir.2009); *United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 873 (5th Cir.2008); *United States ex rel. Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 384 (5th Cir. 2003). Rule 9(b) provides that in order to state a claim for fraud in federal court, the plaintiff must state with particularity the circumstances constituting the fraud. *See* FED. R. CIV. P. 9(b); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir.2010); *Grubbs*, 565 F.3d at 185; *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir.2005); *Willard*, 336 F.3d at 384. Specifically, Rule 9(b) states:

In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

FED. R. CIV. P. 9(b); *see Tellabs, Inc.*, 551 U.S. at 319, 127 S.Ct. 2499; *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir.2008); *Ferrer v. Chevron Corp.*, 484 F.3d 776, 779 n. 7 (5th Cir.2007). Therefore, instead of the "short and plain statement of the claim" required by Rule

8(a) of the Federal Rules of Civil Procedure, Rule 9(b) imposes a heightened standard of pleading for averments of fraud. *See* FED. R. CIV. P. 8(a), 9(b); *Grubbs*, 565 F.3d at 185; *Rafizadeh*, 553 F.3d at 872–73; *Dorsey*, 540 F.3d at 338–39; *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349 (5th Cir.2002). This higher standard of pleading "stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation." *Guidry v. Bank of La-Place*, 954 F.2d 278, 288 (5th Cir.1992) (citing *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1972)). In fact, the requirements of Rule 9(b) serve several purposes:

Rule 9(b) has four purposes: to ensure that the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; to protect defendants against frivolous suits; to eliminate fraud actions in which all the facts are learned after discovery; and to protect defendants from undeserved harm to their goodwill and reputation.

*United States ex rel. King v. Alcon Labs., Inc.*, 232 F.R.D. 568, 570 n. 2 (N.D.Tex. 2005); *see also United States ex rel. Butler v. Magellan Health Servs.*, 74 F.Supp.2d 1201, 1215 (M.D.Fla.1999) (stating that purpose of rule is to prevent fishing expeditions to uncover imagined wrongs).

■■■ The Fifth Circuit applies Rule 9(b) to fraud complaints "with 'bite' and 'without apology' " but also recognizes that Rule 9(b) "supplements but does not supplant Rule 8(a)'s notice pleading." *Grubbs*, 565 F.3d at 185 (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir.1997)). Therefore, Rule 9(b) "requires only simple, concise, and direct allegations of the 'circumstances constituting fraud,' which after [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ] must make

relief plausible, not merely conceivable, when taken as true." *Grubbs*, 565 F.3d at 186. Generally, this means the plaintiff must " 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.' " *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir.), *cert. denied*, 558 U.S. 873, 130 S.Ct. 199, 175 L.Ed.2d 125 (2009) (quoting *Williams*, 112 F.3d at 177; *accord Grubbs*, 565 F.3d at 186; *Dorsey*, 540 F.3d at 339; *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 550 (5th Cir. 2007); *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir.2004)). The particularity demanded by Rule 9(b), however, necessarily differs with the facts of each case. *Grubbs*, 565 F.3d at 188; *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994) (citing *Guidry*, 954 F.2d at 288). While the "time, place, contents, and identity" standard is traditionally required, "depending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard." *Grubbs*, 565 F.3d at 188. Nonetheless, "Rule 9(b) requires the 'who, what, when, where, and how' to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd.*, 607 F.3d at 1032. "Anything less fails to provide defendants with adequate notice of the nature and grounds of the claim." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir.2000); *accord Williams*, 112 F.3d at 178 (citing *Tuchman*, 14 F.3d at 1067). "Facts and circumstances constituting charged fraud must be specifically demonstrated and cannot be presumed from vague allegations." *Howard v. Sun Oil Co.*, 404 F.2d 596, 601 (5th Cir.1968); *see Nathenson v. Zonagen Inc.*, 267 F.3d 400, 419–20 (5th Cir.2001).

In the context of the False Claims Act, however, the Fifth Circuit has recognized that the "who, what, when, where, and how" of the alleged fraud is "not a straitjacket for Rule 9(b)." *Grubbs*, 565 F.3d at 190. Rather, the rule must remain flexible to achieve the "remedial purpose" of the FCA. *Id.* Therefore, if a relator's complaint cannot allege the details of an actual false claim, it may nonetheless survive by "alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* While a plaintiff must still plead the circumstances constituting fraud with particularity, pleading the specific details of individual false claims is unnecessary. *Wagemann v. Doctor's Hosp. of Slidell, LLC*, No. 09–3506, 2010 WL 3168087, at *4 (E.D.La. Aug. 6, 2010) (citing *Grubbs*, 565 F.3d at 190). "In other words, should a plaintiff allege a general scheme to defraud the government, when the scheme occurred, those involved, its mechanics, an explanation of how the claims were false, and a description of the billing system, the 'time, place, contents, and identity' standard is met." *Id.* at *4 (citing *Grubbs*, 565 F.3d at 190–91). Nonetheless, this standard "is not meant to encourage the use of merely suggestive or conclusory allegations." *Id.* To the contrary, "the Rule 9(b) standard requires 'specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent.' " *United States ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F.Supp.2d 519, 530 (N.D.Tex.2010) (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir.2005)); *see also Southland Secs. Corp.*, 365 F.3d at 362. Furthermore, when the facts relating to the alleged fraud are "peculiarly within the perpetrator's knowledge," the pleading re-

quirements of Rule 9(b) may be relaxed to allow the plaintiff to plead on information and belief, provided the complaint sets forth a factual basis for such belief. *Thompson*, 125 F.3d at 903. This exception, however, should not "be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Id.*

■ Moreover, Rule 9(b) "relaxes the particularity requirement for conditions of the mind, such as scienter . . . ." *Tuchman*, 14 F.3d at 1068; *accord Dorsey*, 540 F.3d at 339; *Murungi v. Tex. Guaranteed*, 693 F.Supp.2d 597, 603 (E.D.La.2010). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "Although Rule 9(b) expressly allows scienter to be 'averred generally,' simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Dorsey*, 540 F.3d at 339 (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir.1994)). "The plaintiffs must set forth *specific facts* supporting an inference of fraud." *Id.* (emphasis in original).

■ Under Fifth Circuit precedent, a dismissal for failure to plead fraud with particularity is treated as a dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd.*, 607 F.3d at 1032; *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d at 206; *Motient Corp. v. Dondero*, 529 F.3d 532, 535 (5th Cir.2008); *Southland Secs. Corp.*, 365 F.3d at 361. When evaluating a motion to dismiss for failure to state a claim, "courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir.1996); *see Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.

2010); *Rafizadeh*, 553 F.3d at 872 n. 2. To avoid dismissal, the complaint must contain facts showing that the plaintiff is entitled to relief on its substantive causes of action. *See Twombly*, 550 U.S. at 563, 127 S.Ct. 1955; *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Frank v. Delta Airlines, Inc.*, 314 F.3d 195, 197 (5th Cir.2002). Following the Supreme Court's decision in *Twombly*, the accepted pleading standard is "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." 550 U.S. at 563, 127 S.Ct. 1955 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.1994), *cert. denied*, 516 U.S. 1159, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996)); *City of Dallas v. Hall*, 562 F.3d 712, 717 (5th Cir.2009). Nonetheless, the plaintiff must plead specific facts, not mere conclusory allegations, to prevent dismissal. *See Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir.2009); *Hall*, 562 F.3d at 717; *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir.2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000)).

2. *Application of Pleading Requirements to the United States' Complaint*

■ KBR first seeks dismissal of the United States' complaint on the ground that it fails to satisfy the particularity requirements of the FCA and Rule 9(b). Specifically, KBR avers that, while the complaint describes the alleged kickback scheme in detail, it provides no facts linking the accepted gratuities to any false claims for payment submitted to the government. KBR also asserts that the United States' complaint should be dismissed because it is devoid of particular facts describing how KBR's claims for payment

were inflated, as required by Rule 9(b). The United States counters that the acceptance of kickbacks necessarily gives rise to an FCA claim and, therefore, its complaint need not include specific facts related to KBR's submission of false claims. Essentially, the United States asserts that the facts alleged pertaining to KBR's scheme to accept kickbacks are sufficient to state a claim under the FCA. It further contends that its complaint satisfies the requirements of Rule 9(b). The court disagrees with both of these assertions.

 The FCA attaches liability "not to the underlying fraudulent activity or the government's wrongful payment, but to the claim for payment." *Longhi*, 575 F.3d at 467 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir.1999) (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir.1995))). Therefore, "claims for services rendered in violation of a statute do not necessarily constitute false or fraudulent claims under the FCA." *Thompson*, 125 F.3d at 902; *accord United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 678

(5th Cir.2002); *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 460–61 (5th Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978).[7] Nonetheless, a false claim is stated when it involves a knowingly false certification of compliance with a statute or regulation and that certification is a prerequisite to payment of the asserted claim." *Southland Mgmt. Corp.*, 288 F.3d at 678; *Thompson*, 125 F.3d at 902; *United States ex rel. Bennett v. Medtronic, Inc.*, 747 F.Supp.2d 745, 761–62 (S.D.Tex.2010). In the instant case, however, the United States' complaint fails to plead that compliance with the AKA is a condition of payment under the LOGCAP III contract.[8]

 Furthermore, the United States' complaint does not allege facts that tie KBR's acceptance of kickbacks to its submitted claims for payment. As discussed *supra*, the FCA requires the plaintiff's complaint to "alleg[e] particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190. Here,

---

7. The cases cited by the United States on this point are inapposite. For example, it cites a number of cases for the principle that "[t]he acceptance of kickbacks by employees of a government contractor necessarily gives rise to a claim under the FCA." The cited cases, however, do not so hold. *See United States v. Gen. Dynamics Corp.*, 19 F.3d 770, 777 (2d Cir.1994) (reasoning that "the AKA does not preempt remedies of the United States under the FCA"); *United States ex rel. Compton v. Circle B Enters., Inc.*, No. 7:07–CV–32 (HL), 2010 WL 942293, at *8–10 (M.D.Ga. Mar. 11, 2010) (holding that an AKA violation *may* constitute a false claim where the relator adequately alleges that compliance was a prerequisite to payment under the government contract); *United States v. Dynamics Research Corp.*, No. 03CV11965–NG, 2008 WL 886035, at *11 (D.Mass. Mar. 31, 2008) (stating that false claims arise when they are the direct product of self-dealing or collusion) (emphasis added); *United States v. Cripps*, 460

F.Supp. 969, 973 (D.C.Mich.1978) (finding an FCA violation where defendant's self dealing was expressly prohibited by government contract, which also required competitive bidding); *Morse Diesel Int'l, Inc. v. United States*, 79 Fed.Cl. 116, 121 (2007) (concluding that imposing civil penalties under both the FCA and the AKA for the same conduct is neither duplicative nor prohibited).

8. The United States' complaint does allege that LOGCAP III requires KBR to "comply with, and to ensure that its subcontractors comply with, all applicable Department of Defense directives," federal statutes, and international agreements. The key issue, however, is "certification of compliance, not the payment or acceptance of remuneration," and no certification is alleged in this case. *Bennett*, 747 F.Supp.2d at 784 (citing *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1376–77 (D.C.Cir.2000)).

while the complaint contains a somewhat detailed account of KBR's alleged kickback scheme, it is devoid of any reliable indicia that false claims were actually presented to the government. Specifically, the complaint states only that "the cost of [the tainted subcontracts] was inflated at a minimum by the amount of the kickbacks paid by EGL and Panalpina and accepted by" KBR, which subsequently invoiced those costs to the Army under LOGCAP III. The court finds this conclusory allegation insufficient to serve as "reliable indicia that leads to a strong inference that [false] claims were actually submitted." *Grubbs,* 565 F.3d at 189 (characterizing "reliable indicia" as "dates that services were fraudulently provided or recorded, by whom, and evidence of the [defendant's] standard billing procedure"). Absent ˙ from the United States' complaint are any facts indicating that EGL or Panalpina billed KBR for the costs of the kickbacks and that KBR actually passed those costs on to the government. Accordingly, the United States has failed to meet the requirements of Rule 9(b) as to its FCA claim.

### 3. *Adequacy of the United States' Pleaded Scienter*

■ KBR next asserts that the United States' complaint fails to plead adequately the intent element of the FCA, as it provides only a "conclusory statement [as to intent] that the court should not credit." The United States counters that its pleadings fulfill the FCA scienter requirement because the knowledge of KBR's employees regarding the accepted kickbacks may be imputed to the corporation. KBR responds that it cannot be held vicariously liable for the acts of its employees because the complaint does not allege that the kickbacks were accepted with an intent to benefit the corporation.

■ The FCA requires that a defendant "knowingly" make false claims for payment to the government. 31 U.S.C. § 3729(a). While "the FCA is plain that 'proof of specific intent to defraud' is not necessary ... [the] mens rea requirement is not met by mere negligence or even gross negligence." *United States ex rel. v. City of Houston,* 523 F.3d 333, 338 (5th Cir.), *cert. denied,* 555 U.S. 1012, 129 S.Ct. 570, 172 L.Ed.2d 430 (2008) (quoting 31 U.S.C. § 3729(b)); *accord Longhi,* 575 F.3d at 468. "Indeed, 'it is a long-established rule of [the Fifth Circuit] that to show a violation of the FCA, the evidence must demonstrate "guilty knowledge of a purpose on the part of the defendant to cheat the government." ' " *United States ex rel. Taylor–Vick v. Smith,* 513 F.3d 228, 231 (5th Cir.2008) (citing *United States v. Aerodex, Inc.,* 469 F.2d 1003, 1007 (5th Cir.1972) (quoting *United States v. Priola,* 272 F.2d 589, 594 (5th Cir.1959))). Accordingly, the United States must demonstrate that KBR (1) had "actual knowledge of falsity, (2) acted with deliberate ignorance of the truth or falsity of the information provided, or (3) acted with reckless disregard of the truth or falsity of the information provided" to the government. *Longhi,* 575 F.3d at 468; *Farmer,* 523 F.3d at 339. As discussed previously, the intent element of the FCA may be alleged generally. FED. R. CIV. P. 9(b); *Tuchman,* 14 F.3d at 1068; *accord Dorsey,* 540 F.3d at 339; *Murungi,* 693 F.Supp.2d at 603. Nonetheless, "simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Dorsey,* 540 F.3d at 339 (quoting *Melder,* 27 F.3d at 1102).

■ Fifth Circuit precedent dictates that a corporation may be vicariously liable under the FCA for the acts of an employee where the employee is acting within the scope of his employment and with the purpose of benefitting the employer. *United States v. Hangar One, Inc.,* 563 F.2d 1155, 1158 (5th Cir.1977); *United States v. Rid-*

*glea State Bank*, 357 F.2d 495, 500 (5th Cir.1966); *United States ex rel. Roberts v. Aging Care Home Health, Inc.*, No. 02–2199, 2007 WL 4522465, at *3 n. 2 (W.D.La. Dec. 18, 2007). The United States argues that *Hangar One* and *Ridglea State Bank* were decided under a previous version of the FCA that required proof of specific intent in order to state a viable statutory claim. Therefore, it asserts that because the current version of the FCA does not require specific intent, it should not be required to show KBR employees were acting for the corporation's benefit when they accepted kickbacks in order to impose vicarious liability. While the United States is correct that the cases were decided before the FCA was amended in 1986, they are nonetheless binding precedent on this court, and other courts within the Fifth Circuit have continued to apply the *Hangar One* and *Ridglea State Bank* decisions subsequent to the Act's amendment. *United States v. Tupelo Flite Ctr., Inc.*, No. 92–7409, 1993 WL 543421, at *6 (5th Cir. Dec. 20, 1993) (affirming corporation's conviction for submission of false claims where employees "were acting within the scope of their employment and for the benefit of [the defendant] when committing the fraud");. *Roberts*, 2007 WL 4522465, at *3 n. 2 (relying on *Hangar One* to determine corporation was vicariously liable under FCA for the acts of its employees); *United States v. Conway TEC Corp.*, No. H–86–1198, 1996 WL 41842, at *1 (S.D.Tex. Jan. 23, 1996) ("A corporation may be held liable under the [FCA] when its employees were acting within the scope of their authority and for the purpose of benefitting the corporation.").

■ Here, the United States' complaint summarily alleges that "Mr. Bennett and the other KBR employees knew that it was illegal to accept kickbacks in connection with the award and performance of subcontracts under LOGCAP III" and that KBR submitted its costs to the government, "knowing that the subcontracts were tainted by kickbacks." No facts are provided, however, to demonstrate either that (1) Bennett knew the cost of the kickbacks were included in KBR's invoices to the government or (2) KBR knowingly submitted inflated claims to the government. Furthermore, the United States does not assert allegations sufficient to support a claim of vicarious liability against KBR. Nowhere in the complaint does it allege that KBR employees were acting for the benefit of the corporation when accepting the purported kickbacks. *See Hangar One, Inc.*, 563 F.2d at 1158; *Ridglea State Bank*, 357 F.2d at 500. In fact, the complaint states only that the kickbacks were paid by EGL and Panalpina to ensure favorable treatment on their subcontracts with KBR, suggesting that the subcontractors, rather than KBR, benefitted from the kickbacks. Although KBR may have violated the terms of the LOGCAP III contract by failing "to ensure that all deployed employees, subcontractors, and subcontractors' employees ... comply with pertinent" federal statutes, contractual noncompliance does not suffice to state an FCA claim. *See United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 682 (5th Cir.2003) (en banc) (Jones, J., specially concurring) (stating that "claimants [do not] 'knowingly' present false claims where there were instances of 'mere' contractual or regulatory noncompliance"); *Dekort*, 705 F.Supp.2d at 543 (noting that "contractual noncompliance, standing alone, is not a basis for FCA liability" because a knowing false statement by the contractor is also necessary).

Therefore, the United States' complaint fails to allege facts sufficient to state a claim of vicarious liability against KBR. For this and the foregoing reasons, dismissal of the United States' FCA claim is appropriate. Given the policy of the federal rules to permit liberal amendment of

complaints to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading, however, this dismissal is without prejudice. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Willard,* 336 F.3d at 386; *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 245–46 (5th Cir. 1997).

### C. *Count Two: The AKA*

KBR also alleges that count two of the United States' complaint alleging violations of the AKA should be dismissed pursuant to Rule 12(b)(6) because it improperly alleges a knowing violation of the statute. Specifically, KBR argues that the complaint, which states a cause of action under 41 U.S.C. § 55(a)(1), is improperly pleaded because a prime contractor, such as KBR, cannot be held liable for a knowing violation based solely on the acts of its employees. KBR maintains that such vicarious liability is referenced in 41 U.S.C. § 55(a)(2), which the United States does not cite in its complaint. The United States responds that its complaint is properly pleaded because KBR employees were directly involved in the alleged fraud and their knowledge may be imputed to the corporation.

#### 1. *Rule 12(b)(6) Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming,* 281 F.3d at 161. It is not a procedure for resolving contests about the facts or the merits of a case. *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 1356, at 294 (1990). In ruling on such a motion,

the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *In re S. Scrap Material Co., LLC,* 541 F.3d 584, 587 (5th Cir.2008); *Lovick v. Ritemoney Ltd.,* 378 F.3d 433, 437 (5th Cir.2004); *Ramming,* 281 F.3d at 161; *Collins,* 224 F.3d at 498. Nevertheless, "the plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Ramming,* 281 F.3d at 161 (citing *Elliott v. Foufas,* 867 F.2d 877, 880 (5th Cir.1989)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955; *accord Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir.2007); *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir.2007).

Generally, the court may not look beyond the four corners of the plaintiff's pleadings. *See Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 261 (5th Cir. 1999); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992). The court may, however, consider matters that are outside the pleadings if those materials are matters of public record. *See Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 286 (5th Cir.2006) (citing *Davis v. Bayless,* 70 F.3d 367, 372 n. 3 (5th Cir.1995)); *Cinel v. Connick,* 15 F.3d 1338, 1343 n. 6 (5th Cir.), *cert. denied,* 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994); *see also* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, *supra,* § 1357, at 299. The court may also consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim. *Collins,* 224

F.3d at 498–99 (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)); *see Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir.2003).

### 2. *Summary of the AKA*

The AKA was amended in 1986 "to enhance the government's ability to prevent and prosecute kickback practices" in connection with contracts of the federal government. H.R. REP. No. 99–964, at 4 (1986), 1986 U.S.C.C.A.N. 5960, 5961. The Act prohibits the acceptance or payment of a kickback, as well as the inclusion of any kickback in the cost of a contract. *See* 41 U.S.C. § 51 *et seq.;* H.R. REP. No. 99–964, at 4 (1986). Under the Act, a kickback is defined as

> any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to any prime contractor, prime contractor employee, subcontractor, or subcontractor employee for the purpose of improperly obtaining or rewarding favorable treatment in connection with a prime contract or in connection with a subcontract relating to a prime contract.

41 U.S.C. § 52(2). Further,

> (1) The United States may, in a civil action, recover a civil penalty from any person who knowingly engages in conduct prohibited by section 53 of this title. The amount of such civil penalty shall be—
>
> (A) twice the amount of each kickback involved in the violation; and
>
> (B) not more than $10,000 for each occurrence of prohibited conduct.
>
> (2) The United States may, in a civil action, recover a civil penalty from any person whose employee, subcontractor, or subcontractor employee violates section 53 of this title by providing, accepting, or charging a kickback. The amount of such civil penalty shall be the amount of that kickback.

41 U.S.C. § 55(a)(1)-(2). Here, it is undisputed that the items, if indeed provided by EGL and Panalpina and accepted by KBR, were "kickbacks" under the statutory definition. *See* 41 U.S.C. § 52(2) (defining a kickback as a thing of value provided for the purpose of rewarding favorable treatment). KBR asserts, however, that if liability is proved, it should be subject only to civil penalties equal to the amount of the kickback as provided in § 55(a)(2), rather than the larger penalties contemplated under § 55(a)(1), which is cited by the United States in its complaint. Based on principles of statutory interpretation and an examination of the AKA's history, the court agrees.[9]

Rules of statutory interpretation require this court, "when possible, to give each word in a statute operative effect" and to render none superfluous. *United States v. Vargas–Duran*, 356 F.3d 598, 603 (5th Cir.), *cert. denied*, 541 U.S. 965, 124 S.Ct. 1728, 158 L.Ed.2d 410 (2004); *accord United States v. Molina–Gazca*, 571 F.3d 470, 474 (5th Cir.2009), *cert. denied*, 558 U.S. 1150, 130 S.Ct. 1138, 175 L.Ed.2d 977 (2010). Similarly, a court is "authorized to deviate from the literal language of a statute only if the plain language would lead to absurd results, or if such an interpretation would defeat the intent of Congress." *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 451 (5th Cir.2008) (citing *Lamie v. United States Tr.*, 540 U.S. 526,

---

**9.** Importantly, the United States was able to point the court to only one case, *Morse Diesel Int'l, Inc.*, 79 Fed.Cl. at 122–23, where a prime contractor was held liable under § 55(a)(1), and the court's own search turned up no additional cases where this occurred. Based on the analysis discussed *infra*, the court finds *Morse Diesel Int'l, Inc.*, which is not binding precedent, unpersuasive.

534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)). Here, the plain language of § 55(a) indicates that corporate vicarious liability is subject only to the limited penalty contemplated in § 55(a)(2). To read the statute otherwise would render Congress's reference to fraud committed by an "employee, subcontractor, or subcontractor employee," which appears only in § 55(a)(2), superfluous. Likewise, if statutory violations by a prime contractor's employee were subject to the increased penalties outlined in § 55(a)(1), the more limited fines would be unnecessary. Accordingly, the interpretation of § 55(a) advanced by KBR gives greater effect to all of the statute's terms. *See Molina–Gazca,* 571 F.3d at 474.

 The statutory history of the AKA also supports this interpretation. Prior to the AKA's amendment in 1986, the statute authorized a penalty only against subcontractors and individual recipients of kickbacks, rather than prime contractors. *Gen. Dynamics Corp.,* 19 F.3d at 772 n. 3. The statute's amendment, in part, was designed to enable the government to sue a prime contractor or a "higher tier subcontractor" for a "lower tier subcontractor's" AKA violation under a theory of vicarious liability. H.R. REP. No. 99–964, at 15, 1986 U.S.C.C.A.N. 5960, 5972. The penalty for such vicarious liability is expressly limited to the amount of the kickback. 41 U.S.C. § 55(a)(2); H.R. REP. No. 99–964, at 15. The United States argues that the knowledge of KBR's employees may be imputed to the corporation, making it eligible for increased fines under the statute. As discussed in section B, *supra,* however, "the knowledge or guilty intent of an [employee] not acting with a purpose to benefit his employer, will not be imputed to the em-

ployer, when the latter is sought to be held liable under a statute requiring knowledge or guilty intent." *Ridglea State Bank,* 357 F.2d at 500 (citing *Standard Oil Co. of Tex. v. United States,* 307 F.2d 120, 128–29 (5th Cir.1962)). Because the United States has not sufficiently alleged that KBR employees were acting for the corporation's benefit, imputation is not appropriate in this case. Accordingly, the United States' AKA claim is dismissed without prejudice to refiling.

### D. Counts Four and Five: Quasi–Contractual Claims

 Finally, KBR asserts that the United States' quasi-contractual claims for unjust enrichment (count 4) and payment by mistake (count five) must be dismissed as impermissible where, as here, an express contract unequivocally governs the dispute. The United States avers that the liberal pleading policy of the federal rules permits it to plead alternate theories of recovery.

 Federal Rule of Civil Procedure 8(a) allows the pleading of alternative theories of recovery. FED. R. CIV. P. 8(a)(3). Therefore, it is permissible for a plaintiff to plead both express and quasicontractual claims in a complaint. *Sw. Bell Tel. Co. v. Fitch,* 643 F.Supp.2d 902, 911 (S.D.Tex. 2009); *Recursion Software, Inc. v. Interactive Intelligence, Inc.,* 425 F.Supp.2d 756, 768 (N.D.Tex.2006). Nonetheless, when an express contract governs, no implied or quasi-contract will be found. *Coghlan v. Wellcraft Marine Corp.,* 240 F.3d 449, 454 (5th Cir.2001). Here, the parties do not dispute that LOGCAP III governs their dispute.[10] As such, the existence of an express contract is undisputed, precluding the United States' assertion of quasi-con-

---

10. Neither party has questioned the validity of the express contract. Indeed, the United States refers to LOGCAP III throughout its complaint, asserting that the agreement is the basis for its claims. KBR states in its motion to dismiss that "there is no dispute that the LOGCAP III governs the relationship" between the parties.

tractual claims.[11] *See Recursion Software, Inc.,* 425 F.Supp.2d at 768 (noting that quasi-contractual claims are impermissible where the existence of a valid contract is established); *Infowise Solutions, Inc. v. Microstrategy, Inc.,* No. 3:04–CV–0553, 2005 WL 2445436, at *7 n. 12 (N.D.Tex. Sept. 29, 2005) (opining that if an express contract exists, recovery under unjust enrichment is prohibited); *Slamecka v. Empire Kosher Poultry, Inc.,* 290 F.Supp.2d 934, 939 (N.D.Ill.2003) ("Put simply, plaintiffs cannot avoid the terms ... memorialized in a written contract, the enforceability and applicability of which has not been put into question, by pleading theories of quasi-contractual recovery."); *Detroit Tigers, Inc. v. Ignite Sports Media, LLC,* 203 F.Supp.2d 789, 798 (E.D.Mich.2002) ("[O]nce the existence of an express contract is established, either by the parties' admissions or by judicial finding, quasi-contractual remedies are unavailable."). Accordingly, counts four and five of the complaint are dismissed with prejudice.

### III. *Conclusion*

Based upon the foregoing analysis, the court finds that counts one and two of the United States' complaint should be dismissed without prejudice. The court further finds that the existence of LOGCAP III precludes the United States' assertion of quasi-contractual claims for unjust enrichment and payment by mistake. Accordingly, counts four and five of the complaint are dismissed with prejudice. KBR's motion is DENIED as to its remaining grounds for dismissal.

---

11. Both unjust enrichment and payment by mistake are considered quasi-contractual claims in Texas. *Coghlan,* 240 F.3d at 454 (stating unjust enrichment is based on quasi-contract); *Austin v. Shalala,* 994 F.2d 1170, 1176 (5th Cir.1993) (quasi-contract suits include those where claim is "for the return of money paid by mistake").